JEREMIAH CULLEN *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY AND THE CITY OF NEW HAVEN.
OSCAR TALLMADGE ET UX. *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY AND THE CITY OF NEW HAVEN.

Third Judicial District, Bridgeport, April Term, 1895.   ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Provisions in a city charter giving its Common Council sole and exclusive authority and control over all streets and highways within the city limits, must be construed in connection with the provisions of the General Statutes which relate to the location and operation of railroads and the powers of the railroad commissioners in reference thereto.   Whenever the authority conferred upon the railroad commissioners trenches upon what would otherwise be within the exclusive jurisdiction of some

particular municipality, the latter must give way, in order that the general policy of safety in the operation of railways may be carried out.

Under the provisions of the statutes relating to the removal of grade crossings, the railroad commissioners not only have the power to discontinue so much of the highway as lies within the limits of the railroad location, but also so much of the highway approaches on either side as would otherwise be in a dangerous condition, or become no longer of public necessity and convenience.

Owners of land abutting on that portion of a highway thus discontinued, but which was outside the limits of the railroad location, whose property is necessarily and directly injured by the change, are entitled to compensation therefor; and if the party whose duty it is to pay these damages neglects or refuses to take any steps to procure their assessment, the damages may be recovered in an action at law.

[Argued April 16th—decided May 28th, 1895.]

ACTIONS to recover damages occasioned by the closing of a certain highway in the city of New Haven, upon order of the railroad commissioners; brought to the Superior Court in New Haven County and heard first upon defendants' demurrers to the plaintiffs' complaints; the court, *George W. Wheeler, J.*, overruled the demurrers, and thereafter the case was heard by a committee whose report was accepted by the court, *Ralph Wheeler, J.*, and judgment rendered for the respective plaintiffs; from which the defendants appealed for alleged errors in the rulings of the court.  *No error.*

These actions were brought by the respective plaintiffs to the Superior Court for New Haven County, against the New York, New Haven & Hartford Railroad Company and the city of New Haven, to recover damages for the closing of a highway or street in the city of New Haven, known as Ferry Path.  This street ran diagonally across Main street, and also across Alton street, which was at right angles to Main street; that part of Ferry Path between these two other streets forming with those parts of the latter which lay west of its intersections with them a right angled triangle, of which Alton street furnished the base, and Ferry Path the hypothenuse.

The Shore Line railroad, which had been let to the New York, New Haven & Hartford Railroad Company, crossed Ferry Path at grade near its intersection with Main street,

and went under Main street (the grade of which was higher than that of Ferry Path) by a bridge.   Ferry Path had been laid out and was in use as a highway, before the railroad was constructed.

The New York, New Haven & Hartford Railroad Company and its directors brought an application to the railroad commissioners of the State in August, 1887, which alleged that public safety required that " the travel over said Ferry Path should not so cross the track of said railway company at grade ; that there should be an alteration in the location of said Ferry Path whereby it shall not cross said track at the place where said crossing now is, but shall cross said track a short distance westerly of said crossing, at the place where the line of the highway known as Main street, and also within the city of New Haven, now crosses said track ; and also, that the location of said Ferry Path should be so altered that it shall follow the line of Alton street from the intersection of said Ferry Path and Alton street to the intersection of Alton street and Main street, and thence along the line of Main street until it shall again join the line of Ferry Path, as at present located in the line of Lombard street ; " and that " the expense of such alterations should be borne one-half by said railroad companies and one-half by the city of New Haven ; " and asked them to " determine what alterations should be made, and by whom and at whose expense," and to " make any and all other orders in the premises which may to your honorable board seem just and fitting."   After due notice to the plaintiffs and all owners of land adjoining the Ferry Path crossing, and a full hearing, the commissioners, in September, 1887, made an order, finding the allegations in the application true, " and that public safety required that the location of said Ferry Path, from Alton street to the junction of Main and Lombard streets, be changed so as not to cross said tracks in the present place and manner "; and proceeding as follows :  " We do therefore, in accordance with the agreement between said New York, New Haven and Hartford Railroad Company and the city attorney, order and determine that the location

of said Ferry Path between said points be altered, so that instead of running as at present, it follow the lines of said Alton street from the intersection of said Ferry Path and Alton street to Main street, and thence the lines of said Main street to said Lombard street, and be of the same width as said streets, respectively. All work incident to said alteration to be performed, and all damage paid in the first instance by said New York, New Haven and Hartford Railroad Company, but the same to be at the equal joint expense of said city and said company, the city paying said company one-half the cost of said work and of said damages. And all that portion of Ferry Path as now located between said Alton street and said junction of Main and Lombard streets to be discontinued and closed to public travel."

By means of this order the portion of Ferry Path between Main and Alton streets was soon afterwards closed, but neither of the defendants ever made any movement towards having the damages done to the plaintiffs assessed, or agreed with the plaintiffs as to their amount, or paid them anything on account thereof, though often thereto requested. In September, 1893, each of the plaintiffs brought suit, stating the foregoing facts, and also that he owned a house and lot fronting on that part of Ferry Path so closed, the value of which had been greatly depreciated by the closing of the street. In Cullen's complaint it was alleged that his lot had been entirely shut off from access to any street or highway, and rendered valueless to him. In Tallmadge's complaint it was alleged that all access from his land to Ferry Path had been cut off, other than by the rear of the lot, which was bounded on another street, running parallel to Main street.

Demurrers to these complaints were filed by the railroad company, and overruled (*Geo. W. Wheeler, J.*). Neither defendant having filed any answer, the actions were afterwards referred to a committee to assess the damages, before whom the defendants claimed that the order of the railroad commissioners, as related to the closing of Ferry Path, if valid at all, was valid only so far as to close it within the limits of the railroad location at the point of crossing, and that so much

216 MAY, 1895.

Cullen *v.* N. Y. etc. R. R. Co. et al.   Tallmadge *v.* Same.

of the street as lay on either side of such location was unaffected by such order, and therefore remained open to public use.   The committee assessed the damages to each plaintiff at a certain sum, if this claim was correct, and a greater sum, if the court should be of opinion that it was incorrect and that the whole of that part of the street between Main and Alton streets was closed by means of the order.   The Superior Court accepted the report, and gave judgment in each case for the larger sum, from which the defendants appealed.

*George D. Watrous, Edward G. Buckland,* and *William H. Ely,* for the appellants.

I.   This defendant declines to pay, first, because the discontinuance of Ferry Path, even if within the power of the commissioners, was an exercise of the police power of the State, and no resulting damage is actionable unless some positive statute gives a right of action.   There is no such statute in this State.

The abolition of grade crossings has by this court repeatedly been declared to be an exercise of the police power of the State.   *N. Y. & N. E. R. R. Co.* v. *Waterbury,* 55 Conn., 200 ; *Town of Westbrook's Appeal,* 57 id., 95 ; *N. Y. & N. E. R. R. Co's. Appeal,* 58 id., 532.   In the two instances in which this court was called upon to define the jurisdiction of the Asylum Street Bridge Commission, it emphatically set forth the dangers of grade crossings and declared that the State, had power to abolish them without any compensation to the parties incidentally injured.   *Woodruff* v. *Catlin,* 54 Conn., 295 ; *Woodruff* v. *N. Y. & N. E. R. R. Co.,* 59 id., 65.   See also *Doolittle, State's Attorney* v. *Brandford,* 59 Conn., 402 ; *N. Y. & N. E. R. R. Co.* v. *Waterbury,* 60 id., 1 ; *N. Y. & N. E. R. R. Co.* v. *Bristol,* 62 id., 527.   The Supreme Court of the United States has affirmed the soundness of this court's views in *N. Y. & N. E. R. R. Co.* v. *Bristol,* 151 U. S. 556.

No incidental damage wholly resulting from the exercise of the police power in the abating of a nuisance or anything in the nature thereof, is actionable in the absence of statute

giving a right of action. This principle is now thoroughly
engrafted into our law. None is more firmly settled, nor more
universally acknowledged to be founded upon the soundest
reasoning. Depreciating or destroying the value of property,
or forbidding its use in a certain way in the abatement of a
nuisance, is *damnum absque injuria*. It is not a "taking" of
property. *Woodruff* v. *N. Y. & N. E. R. R. Co.*, 59 Conn.,
63, 93 ; *Fertilizing Co.* v. *Hyde Park*, 97 U. S., 659 ; *Mugler*
v. *Kansas*, 123 U. S., 623, 668 ; Dillon Mun. Corp. § 141.
If the decisions of this court in *N. Y. & N. E. R. R. Co.* v.
*Waterbury*, 60 Conn., 9, and *State* v. *Asylum St. Com.*, 63
Conn., 102, be sound law, then the correlative of the doctrine
there laid down must equally be good law. In those cases it
was held that the New England road could not recover for
land which had depreciated in value by reason of the abolition
of grade crossings. Why then should not the rule work both
ways ? Why should the railroad company be compelled to
pay for land of somebody else incidentally depreciated in
value by the abolition of a grade crossing ?

In 1887 no statute of this state required payment for any
such damage as plaintiffs claim to have sustained. This pro-
ceeding was brought under Chap. 36 of the Public Acts of
1876, as modified by Chap. 8, Public Acts of 1877. The
rights acquired and the liabilities imposed in proceedings
under this statute were left untouched by subsequent legisla-
tion. See Public Acts 1889, p. 134, § 9.

II. If a property owner deprived of *all* access to a highway
from his premises is given a legal remedy, this is denied him
where he has access to another highway than the one discon-
tinued. This doctrine, foreshadowed in *People* v. *Ker.*, 27
N. Y., 188, was distinctly announced in *Coster* v. *Mayor*, 43
id., 399–414, and affirmed in *Fearing* v. *Irwin*, 55 id., 486, in
which the court says, p. 490 : " though one public way to
property is closed, if there is another left, the property owner
sustains no actionable damage." The decision in *Story* v. *El.
R. R. Co.*, 90 N. Y., 122, did not change the New York doc-
trine on this point. For since that case this question has
again arisen, and *Coster* v. *Mayor* and *Fearing* v. *Irwin* have

been approved. See *Wilson* v. *N. Y. C. & H. R. R. R. Co.*, 2 N. Y. Supp., 65; *Egerer* v. *N. Y. C. & H. R. R. R. Co.*, 130 N. Y., 108; *City of East St. Louis* v. *O'Flynn*, 119 Ill., 204; *Davis* v. *Hampshire County*, 153 Mass., 218; *Gerhard* v. *Seekonk River Bridge Co.*, 15 R. I., 334; *Polack* v. *San Francisco Orphan Asylum*, 48 Cal., 490; *Kings County F. Ins. Co.* v. *Stevens*, 101 N. Y., 417; *Heller* v. *Atchinson T. & S. F. R. Co.*, 28 Kan. 625; *Castle* v. *Berkshire*, 11 Gray, 26; *Chicago* v. *Union Bldg. Assn.*, 102 Ill., 379.

III. The defendant further declines to pay, because in fact there has been no closing of Ferry Path, except at the place of crossing. The act of the railroad commissioners in declaring Ferry Path closed was *ultra vires* and void, except as to the place of crossing. Ferry Path is still a highway (discontinued to be sure where it formerly crossed this defendant's tracks), and plaintiffs therefore have sustained no legal damage. From 1849, when the first railroad commission was appointed, down to September 6th, 1887, the railroad commissioners have been only the agents of this State to exercise in its behalf its police power in supervising steam railroads and lessening their discomforts and dangers. From 1849 to 1888 the powers and duties of the railroad commissioners were limited to the protection of life and the enhancing of public safety. In none of the legislation has the General Assembly extended the scope of their jurisdiction beyond the police power. They could not discontinue Ferry Path and close it to public travel, northerly and southerly from the railroad tracks, and their order to that effect was clearly beyond their power. Our petition did not ask for any such *ultra vires* act. The power to discontinue Ferry Path or any highway in New Haven, is vested solely in the court of common council of the city of New Haven. Charter of the city of New Haven, § 31. It does not appear from the record that the court of common council has discontinued any part of Ferry Path. As a matter of fact no part of Ferry Path except that between the two fences ever has been discontinued.

If Ferry Path is still a highway on each side of the railroad tracks, the plaintiffs have suffered no injury for which

they can obtain damages.   The mere fact that access to their property is rendered less convenient is not a ground for damages.   *Bigelow* v. *Hartford Bridge Co.*, 14 Conn., 565; *O'Brien* v. *Nor. & Wor. R. R. Co.*, 17 id., 371; *Clark* v. *Saybrook*, 21 id., 313; *Smith* v. *Boston*, 7 Cush., 254; *Davis* v. *County Com'rs*, 153 Mass., 218; *Coster* v. *Mayor*, 43 N. Y. 399.

*Henry G. Newton*, *Philip P. Wells*, and *James P. Bree*, for the appellees.

I. Defendants are estopped from denying that the street is closed.   They have caused an order to be entered closing the street, and in consequence of that order the street has been actually closed.

The closing of parts of highways adjacent to crossings is within the power of the railroad commissioners.   This power is continually exercised.   The defendant railroad has given the statute this practical construction.   Parts of highways have been closed under the statute dozens of times.   The statute (§ 3489) expressly provides that the petition may allege that public safety requires alteration in the location of the highway.   An alteration in the location of a highway certainly implies a discontinuance of the original highway where the location is altered.   In *Waterbury* v. *H., P. & F. R. R. Co.*, 27 Conn., 147, two miles of road was discontinued and another highway, then open, substituted, and the court held it legally done.   The statute, as in the present case, gave power to make alterations.

II. The statute, § 3490, provides for payment to the owner of the land or other property to be removed or taken.   The plaintiff has an easement in this street which is property. The owner of a lot abutting on a street has a property in the street which is taken when the street is dedicated.   *Koane* v. *N. Y. E. R. R. Co.*, 125 N. Y., 164, 180, 185; *Rensalaer* v. *Leopold*, 106 Ind., 29, 31; *J. M. & I. R. R. Co.* v. *Esterle*, 13 Bush (Ky.), 667, 674; *Crawford* v. *Delaware*, 7 Ohio St., 459, 469; *Lexington & O. R. R. Co.* v. *Applegate*, 8 Dana (Ky.), 289, 294, 33 Am. Dec. 497; *White's Bank of Buffalo* v. *Nichols*, 64 N. Y., 65, 73; *Drake* v. *Hudson Riv. R. R. Co.*,

7 Barb., 508, 535; *State* v. *Berdetta,* 73 Ind., 185, 189, 38
Am. Rep., 117 ; *Loss* v. *Thompson,* 78 Ind., 90, 92 ; *Grand
Rapids & I. R. R. Co.* v. *Heisel,* 38 Mich., 62, 69 ; *Port
Huron & S. W. R. R. Co.* v. *Voorhies,* 50 id., 506 ; *Tran-
sylvania University* v. *Lexington,* 3 B. Mon. (Ky.), 25, 27,
38 Am. Dec., 173 ; *Indianpolis* v. *Kingsbury,* 101 Ind., 200,
212 ; *Le Clercq* v. *Gallipolis,* 7 Ohio, 217, 221 ; *Indianapolis*
v. *Croas,* 7 Ind., 9, 12 ; *Butterworth* v. *Bartlett,* 50 id., 537,
538 ; *Pearsall* v. *Eaton County,* 4 L. R. A., 193, 71 Mich.,
438 ; *Cook* v. *Quick,* 127 Ind., 477, 479 ; *Theobold* v. *L. N.
O. & T. Ry. Co.,* 66 Miss., 279, 287 ; *C. B. U. P. R. R. Co.*
v. *Twine,* 23 Kan., 585, 589 ; *C. B. U. P. Rld. Co.* v. *An-
drews,* 30 id., 590, 595 ; *B. & M. R. R. Co.* v. *Reinhackle,*
15 Neb., 279, 281 ; *Lackland* v. *North Mo. R. R. Co.,* 31 Mo.,
180, 187.

III. The charters of the defendant railroad company bind
it to pay the damage caused by the closing of this highway.
The closing of it is essentially a part of the construction of
the road.   4 Special Acts, 1020, 1022.  See also *Nicholson* v.
*N. Y. & N. H. R. R. Co.,* 22 Conn., 74, 87 ; *Bradley* v.
*N. Y. & N. H. R. R.,* 21 id., 294, 313 ; *English* v. *New H.
& N. Co.,* 32 id., 240 ; *Burnett* v. *City of New Haven,* 42 id.,
174, 198 ; *City of New Haven* v. *N. Y. & N. H. R. R. Co.,* 39
id., 128, 132 ; *Longworth* v. *Meriden and Waterbury R. R.
Co.,* 61 id., 451.

The closing of this highway is not a governmental act.   It
is no more so than was the taking of land and the alteration of
highways when the railroad was constructed.   This is sub-
stantially held in nearly all the Connecticut cases quoted.

IV. The claim that there is no legal damage because the
Tallmadges have a way out over their own land, whatever
may be the law in regard to the farms, is entirely technical
and wholly unjust as applied to city lots, and is opposed to
the general current of authority.   The cases heretofore cited
as to the rights of abutting owners in the street, make an
express distinction between city lots and country property,
and a great number hold that the abutting owner has a prop-
erty right in the maintenance of the street.   See also *Meyer*

MAY, 1895.    221

Cullen *v.* N. Y. etc. R. R. Co. et al.    Tallmadge *v.* Same.

v. *Teutopolis*, 131 Ill., 552; *Moose* v. *Carson*, 104 N. C., 431, *Hall* v. *Baltimore*, 56 Md., 187; *Cincinnati* v. *White*, 6 Pet., 431; *Stetson* v. *Faxson*, 19 Pick., 147; *Smith* v. *Boston*, 7 Cush., 254; *Haynes* v. *Thomas*, 7 Ind., 38; *Tate* v. *Ohio R. Co.*, id., 479; *Knox* v. *Mayor*, 55 Barb., 404; *Story* v. *R. R.*, 90 N. Y., 122; *Block* v. *Salt Lake R. T. Co.*, 24 L. R. A., 610, 9 Utah, 31; *Ashby* v. *Hall*, 119 U. S., 526; *Salisbury* v. *Andrews*, 128 Mass., 336; *Petition of Concord*, 50 N. H., 530.

That natural justice requires that railroad companies should pay the expense and damage made necessary by the increased danger to life and property caused by their trains, and that statutes should be construed in accordance with this principle, is apparent from the following cases. *Martin* v. *N. Y. & N. E. R. R. Co.*, 62 Conn., 340; *Grissel* v. *Housatonic Railroad. Co.*, 54 id., 447, 461; *Regan* v. *N. Y. & N. E. R. R. Co.*, 60 id., 124, 136; *Middletown* v. *N. Y.*, *N. H. & H. R. R. Co.*, 62 id., 492, 494; *N. Y. & N. E. R. R. Co.'s Appeal*, 62 id., 527, 539; *N. Y. & N. E. R. R. Co.'s Appeal*, 58 id., 532, 540; *Town of Fairfield's Appeal*, 57 id., 167, 171; *Suffield* v. *N. H. & N. Co.*, 53 id., 367, 371; *State's Attorney* v. *Selectmen of Branford*, 59 id., 402, 407.

BALDWIN, J.    Two claims are made in support of these appeals; first that, under the order of the railroad commissioners, only so much of Ferry Path was or could be closed as is included in the location of the railroad at the point of crossing; and, second, that, however this may be, the order was made in the exercise of the police power of the State, to remove a source of public danger, and therefore any resulting damage to private individuals is *damnum absque injuria.*

The application to the commissioners was founded on chapter 36 of the Public Acts of 1876, as amended by chapter 8 of the Public Acts of 1877 (General Statutes, §§ 3489, 3490, 3491). These statutes provided that the directors of any railroad company whose road crosses or is crossed by a highway, might bring a petition to the railroad commissioners, "therein alleging that public safety requires an alteration in such crossing, its approaches, the method of crossing,

the location of the highway or railroad, or the removal of
obstructions to the sight at such crossing, and praying that
the same be ordered." Notice was then to be given to the
owners of the land adjoining such crossing, and after due
hearing, the commissioners were to " determine what altera-
tions or removals shall be made, by whom done, and at whose
expense." In case the company could not "agree with the
owner of the land or other property to be removed or taken un-
der the said decision of the railroad commissioners, the dam-
ages " were to be " assessed in the same manner as is provided
in case of land taken by railroad companies. The expense
of such assessment to be paid in the same manner as the ex-
pense of the alterations." An appeal to the Superior Court,
to be taken within twenty days, was given to any person
aggrieved by the decision.

The charter of the city of New Haven, which was enacted
in 1881, provides (§ 31) that the Court of Common Council
"shall have sole and exclusive authority and control over all
streets and highways, and over all parts of streets and high-
ways now or hereafter existing within the limits of said city,
and shall have sole and exclusive power to lay out, make, or
order new highways and streets within the limits of said
city, and to alter, repair, and discontinue all highways and
streets now or hereafter existing within the limits of said
city."

This section must be read in connection with the statutes
existing at the date of its enactment which relate to the loca-
tion of railroads and the powers of the railroad commis-
sioners. It has always been the policy of the State to allow
railroad companies, with the approval of the railroad commis-
sioners, to lay out and construct their roads in the best pos-
sible line, and if necessary for this purpose to change the
course of existing highways. General Statutes, §§ 3476,
3480, 3488, 3461. Such a change may result in the discon-
tinuance of a part of a highway and the substitution of a new
section of road, or the diversion of travel upon another exist-
ing highway. *Waterbury* v. *Hartford, Providence & Fishkill*

*R. R. Co.*, 27 Conn., 146, 156 ; *Suffield* v. *New Haven &
Northampton Co.*, 53 id., 367.

These provisions in the general laws control, so far as they
apply, the effect of § 31 of the city charter.    *State ex rel. New
Haven & Derby Railroad Co.* v. *Railroad Commissioners*, 56
Conn., 308.    The same reasons which induced the legislature
to put in the hands of railroad companies the power, with the
approval of the railroad commissioners, to alter or discontinue
highways, in order to secure the best location for a railroad,
apply also, and with equal force to the case of an alteration
or discontinuance of a highway, in order to promote the safe
operation of a railroad.    The Act of 1876 appears to us to
have been framed with this view.    A steam railroad is a
road in the safe maintenance and operation of which the
whole State is directly interested.    It is therefore put under
the supervision of a board of State officers, with extensive
powers.    Their authority sometimes trenches upon what
would otherwise be within the exclusive jurisdiction of some
particular municipality, and wherever it does, the latter
must give way, for so only could any general policy of ad-
ministration be carried out.    The proper regulation of rail-
roads, in their course through different towns, is a matter
which is necessarily of more than local concern.    As high-
ways must give place to railroads where both cannot occupy
the same ground, so municipal control and management of
highways must yield, at times, to State control and manage-
ment, when safety of railway operation is in question.

It would deprive the statute for the removal of grade cross-
ings, which is under consideration, of much of its efficiency,
were it to be construed as authorizing the discontinuance,
under an order of the railroad commissioners, of only so much
of a highway as lies within the limits of the railroad loca-
tion.    To accomplish the best results it is plainly necessary
that they should have power to discontinue also so much of
the highway approaching the crossing on each side, as other-
wise would be left still in a condition of danger, or become
no longer of public necessity and convenience.

That portion of Ferry Path between Alton and Main

streets is about five hundred and forty feet in length.    The railroad crossing was about one hundred and fifty feet from Main street, and forty feet wide.    The discontinuance of the street at the point of crossing only, would have left a short *cul de sac* on each side, diagonally bounding house lots, most of which ran through to other streets which were thoroughfares.    We are of opinion that the discontinuance of these approaches, as ordered by the commissioners, was a matter properly within their jurisdiction, and fully justified under the terms of the application.

The statute provided that the commissioners should determine what " alterations or removals " should be made, and " at whose expense."    If the party by whom the changes were to be made could not agree with the owners " of the land or other property to be removed or taken," the damages were to be " assessed in the same manner as is provided in case of land taken by railroad companies ; " the expense of such assessment to be paid in the same manner as the expense of the alterations.    The general law as to taking land by railroad companies (General Statutes, § 3464) provides that if they cannot agree with the parties interested, they may apply to any judge of the Superior Court for the appointment of appraisers, whose duty it shall be " to estimate all damages that may arise to any person from the taking and occupation of such real estate for railroad purposes."

The reference in the statute to removals of property is obviously confined to removals of obstructions to the sight, which make the use of the crossing dangerous to those using the highway or the railroad.    But the provision for the payment of the " expense of the alterations," and the assessment of damages in favor of the owners of land or other property taken, appear to us adequate to support the plaintiffs' actions.

The result of the order was to leave the house lot of the plaintiff Cullen, which adjoined the crossing, without any mode of ingress or egress, except by the permission of his neighbors, or by trespassing on the railroad location.    His property was thereby taken in the strictest sense, and the railroad company, although five years elapsed before the in-

stitution of the action, took no proceedings for his relief under General Statutes, § 3462.

The house lot of the plaintiff Tallmadge, was more than a hundred feet from the crossing and was bounded by Monroe street, in the rear. °It was improved by a house fronting on and near to Ferry Path, the rear of which was more than a hundred feet from the other street. He was one of those named in the original application of the railroad company, with reference to this crossing, as parties to be notified, and we think he may properly be regarded as one of " the owners of the land adjoining such crossing," within the spirit and intent of the statute, which obviously requires notice to all parties adversely interested. *Town of Westbrook's Appeal*, 57 Conn., 95, 102. All owners of land abutting on that part of the street discontinued, and so presumptively owners of the fee in half of it, came within that description, since the use and enjoyment of their property was necessarily and directly affected by the change. As the word " bridge " may include not only the principal structure but the highway approaches on each side, so the words "land adjoining the crossing," as used in the Act of 1876, in order to do justice to all concerned, must be taken to cover land adjoining the approaches to the crossing, which are or may be altered by the order of the railroad commissioners. *Burritt* v. *New Haven*, 42 Conn., 200 ; *New Haven and Fairfield Counties* v. *Milford*, 64 id., 568. The damages done to the owner of any such land, if his " land or other property " is taken, unless agreed upon with him, are to be assessed by appraisers, who are to include in their estimate (General Statutes, § 3464) all damages that may arise to him from its taking or occupation. In *Bradley* v. *New York & New Haven Railroad Co.*, 21 Conn., 294, 309, it was held that to raise the highway approaches to a railroad bridge in such a manner as to obstruct the access to a store and lot abutting on the street, was not a taking of the land, within the meaning of the Constitution of this State, but was an act for which the railroad company was liable, under a provision in its charter, requiring it to pay all damages that might arise to any person by its taking or injuring their real estate.

In the case at bar, the statute provides for all damages arising from the taking of the land, " or other property " of the plaintiff.   The owner of land abutting on a highway has an interest in the highway of a special and peculiar nature, which may well be considered as a part of his property.   *Hubbard* v. *Deming*, 21 Conn., 356, 360; *Wheeler* v. *Bedford*, 54 id., 244; *Frink* v. *Lawrence*, 20 id., 117.   If it is his only means of communication with the rest of the world, its maintenance is essential to the enjoyment of his land.   If it is simply one of several means of communication, its discontinuance, while it would not destroy, must of necessity depreciate his estate.   To take away the street on which a man's house fronts, is to take away a considerable part of its value. For such an injury to his property we think the statutes under consideration afford a remedy, even without the aid of the charter of the Shore Line Railroad Company, which makes it liable to pay all damages that may arise to any person from its entry upon or use of any franchises, lands, or real estate in the course of the construction or operation of its road.   4 Priv. Laws, 469.   The resulting damage constitutes a legitimate part of the " expense " of the improvement, as to which provision is made in General Statutes, § 3489.

Had that part of Ferry Path which was discontinued by the order of the railroad commissioners been discontinued by the city of New Haven, the plaintiffs would have been entitled to payment of just damages to be assessed by the board of compensation under § 47 of the city charter.   The city was a party to the proceedings before the commissioners, and in their apportionment of the expense that would be occasioned by their order, was subjected to the payment of half. This was a matter within their jurisdiction, and as no appeal was taken by the city, their decision was final.   *Town of Fairfield's Appeal*, 57 Conn., 167.

Neither the railroad company nor the city having taken any steps to procure an assessment of the plaintiffs' damages, they had a right to sue for them at law.   *Holley* v. *Torrington*, 63 Conn., 426.   They were also entitled to rely on the order of the railroad commissioners as establishing the liabil-

ity of both defendants, and the obligation of each to pay half of the damages which might be assessed. No exception has been taken by either defendant to the rendition of a joint judgment.

The demurrer of the railroad company was properly overruled. So far as the city is concerned, as it raised no points of law in the court below, it can raise none here, which are not necessarily presented on the face of the judgment. But one such is suggested,—that the award of damages is excessive, because based upon a legal closing of Ferry Path for the entire distance between Main and Alton streets. That this was its basis is true; but as we are of opinion that all that part of Ferry Path was legally closed, it constitutes no ground of appeal for either defendant.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.