## THE QUINNIPIAC BREWING COMPANY ET AL *vs.* CHARLES HACKBARTH ET AL.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js. ?

In the statutes of this State relating to the sale of intoxicating liquors there is no attempt to distinguish in phraseology between a liquor license and the certificate thereof. The word "license" is used interchangeably to signify the intangible right granted and the paper issued to evidence the grant.

Under Chap. 128 of the Public Acts of 1895 creating the right to attach liquor licenses, the certificate is treated as representing the privilege conferred, and the custody of the certificate by the attaching or levying officer stands for the custody of the law, through and by him, of the intangible franchise, which is the only thing of value.

Where a defendant in replevin makes no claim for damages sustained by him by reason of the replevy, he is free to recover them in his action upon the replevin bond.

In the present case the liquor license had not expired when judgment for its return was rendered in the replevin action, although it had before demand was made upon the execution. *Held* that the defendant in replevin was entitled to recover, in an action on the bond, substantial damages for the period of time the license had to run after the replevin judgment.

A plaintiff, by virtue of whose process a sheriff attaches and holds a liquor license, remains the real party in interest in subsequent replevin proceedings brought by third parties against the sheriff as

the sole defendant, and may therefore sue upon the replevin bond although not formally a party to it.

Argued November 6th, 1901—decided January 9th, 1902.

ACTION to recover the amount of a replevin bond, brought to the Court of Common Pleas in New Haven County and tried to the court, *Hubbard, J.;* facts found and judgment rendered for the plaintiffs, and appeal by the defendants for alleged errors in the rulings of the court. *No error.*

The plaintiff company, in November, 1898, brought suit against one Meyer, and gave the writ and complaint therein to Speigel, its coplaintiff, as deputy-sheriff, to serve. By virtue of the mandate of the writ Speigel attached as the property of the said defendant, Meyer, a liquor license issued November 18th, 1898, in the name of the present defendant Charles Hackbarth, and still standing in his name. In March following, the plaintiff company obtained judgment against Meyer for $164.75 damages and $30.69 costs. Immediately Speigel, as an officer having in his hands an execution issued upon said judgment, made demand of Meyer, and, upon refusal of payment, levied upon said license and held the same under said levy until March 29th, when it was replevied upon process brought by the defendant herein, Charles Hackbarth, against said Speigel as the sole party defendant in said replevin action. The present defendants, Charles and Gottlieb Hackbarth, were respectively principal and surety in the replevin bond. On October 24th, 1899, judgment was rendered in favor of said Speigel in said replevin action, for the return of the replevied property and $1 damages, and costs taxed at $27.79. Execution issued upon said judgment and demand was, on December 11th, 1899, made thereunder upon said Charles Hackbarth, and on the following day upon the defendant Gottlieb Hackbarth, for the return of said license and for said sums of $1 damages and $27.79 costs, both of which demands were refused. This suit was then brought.

*Cornelius J. Danaher,* for the appellants (defendants).

*Edmund Zacher,* for the appellees (plaintiffs).

PRENTICE, J.  We shall best determine certain questions raised in this case, by an inquiry as to the character and status under our statutes of a liquor license, so-called, as attachable and repleviable property.  Ordinarily we should expect the term license, if used with strict propriety, to refer to the right or privilege conferred.  If we refer to our statutes regulating the sale of intoxicating liquors, we notice that there is nowhere any attempt to distinguish in phraseology between the license and the certificate of license.  In fact the word "certificate," or other word of similar import, cannot be found, we believe, in these statutes.  On the contrary, the word "license" is repeatedly and uniformly used, as it is frequently in common speech, when the certificate as a piece of paper is meant.  General Statutes §§ 3069, 3070, 3072; Public Acts of 1897, Chap. 151.  It is used interchangeably to signify the intangible right granted and the paper issued to evidence the grant.

The right to attach liquor licenses originated in the Act of 1895, Chap. 128, which is a somewhat unusual and anomalous one.  As it is the Act which gave rise to the present contention, it becomes important to give it a little study to discover in the light of its apparent purpose what interpretation and effect ought to be given to it, and incidentally to the terms it employs.  The purpose of the enactment is manifest.  It seeks to provide a way for the attachment and levy of execution upon licenses to sell intoxicating liquors, using the term as embracing the privilege and not as limited to the mere paper.  It is our duty to give this legislative intention effect, if we may in any reasonable way consonant with law and the language employed.  Examining the statute in connection with the other statutes relating to liquor licenses, it would appear that the term license in the former is again employed with no reference to its strict meaning but as signifying generally the certificate and the privilege which it evidences.  The certificate is, apparently, in the mind of the legislator the "license," or at least its outward token.  The certificate is treated as representing and standing for the privilege conferred.  The custody of

the certificate by the attaching or levying officer is made to stand for the custody of the law through and by him of the intangible franchise, which is the only thing of value. Holding the certificate the officer is regarded as holding not only it as a piece of valueless paper, but by it, as the visible token, all that it represents to respond to execution in the same manner as personal property. The language of the Act is especially suggestive of this purpose and meaning. It provides that "the license, and all right and interest therein," may be attached, etc., and that such attached license "shall be holden to respond to execution in the same manner and for the same length of time as personal property attached." We feel bound, therefore, to hold as we have already indicated.

When, therefore, officer Speigel attached what, following the language of the statute, he called the "license," and took the certificate into his custody and thereafter in like manner levied thereon, he attached and levied upon something more than a worthless piece of paper which his hands rested upon. He attached and levied upon a "license"—speaking after the manner of common speech and the statutory meaning given to the word—upon the valuable intangible right conferred upon the licensee, of which the paper was the recognized token and representative. Holding the paper he held the embodiment of the liquor selling franchise, a valuable thing, to respond to a judgment. Deprived of the paper he lost all that valuable thing—all that he had. So it was as a natural consequence that when Charles Hackbarth, by his replevin proceedings, replevied what he still called the "license," and took from the officer the certificate, he in contemplation of law took what the officer lost. By the same token that the officer held and lost valuable, although intangible, rights represented by it, the replevying plaintiff in legal effect took them. What he took might not carry the right of enjoyment of the franchise. The privileges which strictly constituted the license might be dormant, but they had an inchoate existence which was of value to the lawful possessor of the certificate.

These conclusions dissipate certain of the defendants' contentions. There remains, however, to be considered, the further claim that in no event was the plaintiff entitled to recover more than nominal damages and costs. The reasons assigned are three. 1. That the subject-matter of the replevy was a worthless piece of paper only. 2. That the judgment for $1 damages in the replevin action was in full of all claims and demands arising from the breach of the recognizance. 3. That the license had expired before demand under the replevin execution.

The first reason has already been considered and found baseless. The second flies in the face of *Gould* v. *Hayes*, 71 Conn. 86. The situation when this case was begun was precisely like that in the case cited. Speigel, the replevin defendant, made no claim in that proceeding for the damages sustained by him by reason of the replevy of the license. He was therefore free to recover them in his action upon the recognizance. With respect to the third objection, it is important to observe that although the license had expired when the demand for its return was made, it had not expired when the judgment in replevin was rendered. The replevin defendant was therefore entitled to recover, in an action upon the recognizance, substantial damages for the period of time the license had to run after the replevin judgment.

These three claims are the only ones bearing upon the right of the plaintiffs to recover substantial damages, or upon the amount of substantial damages to be recovered, that were made in the court below, or assigned as error here, or suggested in the brief of counsel. It seems to have been assumed upon the trial, that if the plaintiffs were entitled to substantial damages the rule of damages adopted by the court was the true one, and no question has been made as to the right of the plaintiffs to recover under the complaint for whatever damages they suffered by reason of the replevy of the license, save only such as they were precluded from recovering by reason of the replevin judgment. It has never been suggested by the defendants that the amount of the judgment was possibly somewhat greater than the plaintiffs' interest,

or that the complaint was possibly not sufficiently comprehensive in its allegations to justify a recovery of the whole or part of the damages the plaintiffs actually suffered, and for which, as we have seen, they were entitled to recover in an action upon the recognizance. These questions not having been made are not properly before us for consideration.

The defendants urge as another ground of error the rendition of judgment in favor of the plaintiff company, it not having been a party to the replevin proceedings and the recognizance sued upon. The defendant Charles Hackbarth, availing himself of the provisions of § 1325 of the General Statutes, elected to make the officer, Speigel, the sole defendant in replevin. Notwithstanding that election the Brewing Company, by virtue of whose process the latter was holding the license replevied, remained the real party in interest in all the subsequent proceedings, and is the real party in interest in the present action. As such it was properly made a plaintiff, and judgment in its favor is not erroneous. Rules under the Practice Act, p. 40, § 126.

There is no error.

In this opinion the other judges concurred, except HAMERSLY, J., who dissented.