GERTRUDE A. WARDELL *vs.* THE TOWN OF KILLINGLY.

First Judicial District, Hartford, March Term, 1922.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KELLOGG, Js.

General Statutes, § 1007, prescribes that school authorities shall examine persons desiring to teach in the public schools, and give to those with whose moral character and ability they are satisfied, if found qualified to teach reading, writing, arithmetic and grammar, the rudiments of geography and history, and the rudiments of drawing if required, a certificate authorizing the holder to teach in any public school in the town or district so long as desired, without further examination unless specially ordered; that if a person is examined and found qualified to teach branches other than those required in all cases, such branches shall be named in his certificate; and that such certificate shall be signed by a

Wardell *v.* Killingly.

majority of the board or by all the members of the committee appointed by the board to make the examination. Section 1009 provides that no teacher shall be employed in any school receiving any portion of its support from the "public money," nor be entitled to any wages payable out of any public money appropriated to schools, until and unless he has received the certificate referred to in § 1007. Many years after these provisions were enacted, a law was passed in 1884, now § 856 of the General Statutes, which permits any town, at its own expense, to employ one or more persons to give instruction in its schools in the rudiments of vocal and instrumental music. This statute made no reference to § 1007, nor did it require the examination and certificate of qualification prescribed by that section. *Held:*—

1. That the later Act of 1884 (§ 856), being merely permissive in its terms and confined solely to music, was not subject to or controlled by the provisions of § 1007; and therefore if the responsible officials of a town, in the exercise of their discretion in any appropriate manner, had found a person whom they deemed qualified to teach music and who was satisfactory to them in other respects, they might legally employ such person to teach music on such terms and for such time as might be mutually agreeable, and might notify such person of their conclusion in any way they saw fit.

2. That the words "public money," in § 1009, referred to the money of the State appropriated from its treasury to public schools, not to the money of a town raised by taxation or received by it from other sources.

The plaintiff, a music teacher, was employed as such by the defendant, and sought to recover damages for her alleged wrongful discharge. Upon the trial the defendant insisted that the certificate required by § 1007 was essential to the plaintiff's recovery, and as the trial court took that view, the plaintiff asked and obtained a postponement of the trial, and meanwhile applied for orders in the nature of *mandamus* requiring the school authorities to issue the statutory certificate; these orders were refused, and the plaintiff appealed. *Held* that the refusal to issue the orders in the nature of *mandamus* was correct, since the relief so demanded was not essential to the plaintiff's recovery.

A secretary or clerk of a committee cannot properly be ordered to supply an omission in its records of which he has no knowledge or information.

Argued March 7th—decided June 3d, 1922.

ACTION to recover damages for an alleged breach of contract to employ the plaintiff as supervisor and teacher of music in the defendant's public schools for

the term of a school year and to pay her the salary agreed upon, brought to the Superior Court in Windham County, which denied (*Hinman, J.*) the plaintiff's applications for certain orders in the nature of *mandamus* to aid her in the trial of the cause, and from judgments dismissing such applications the plaintiff appealed. *No error.*

In the original complaint the plaintiff alleged that the defendant entered into a contract with her for her services as a supervisor and teacher of music in its public schools for the school year of 1918–1919, and agreed to pay her for such services $800 in ten equal payments; that she entered on the performance of this contract on September 11th, 1918, and rendered all the services required of her by the contract until February 14th, 1919, when the defendant terminated her employment and broke its contract; that before that date the defendant had paid the plaintiff five instalments or half of her salary; that by reason of the termination of her employment and the breach of contract she had lost the remainder of her salary, and her reputation as a teacher of music had been injured and she will be hindered in obtaining similar employment.

The defendant demurred to this complaint on the ground that it did not allege that the plaintiff had received a certificate authorizing her to teach in the defendant's public schools, whereas the holding of such certificate was a condition precedent to such employment. The court, *Greene, J.*, applying General Statutes, §§ 1007 and 1009, sustained this demurrer. Thereupon the plaintiff amended her complaint by adding allegations to the effect that she had been examined in 1917 as to her qualifications to supervise and teach music by a committee appointed by the de-

fendant's school committee for that purpose; had been found so qualified, and had received from the committee a writing notifying her of their conclusion; that a contract was thereupon made with her for her services during the school year of 1917 to 1918; that she rendered and was paid for such services; that in 1918 the defendant's school committee made with her the contract described in the complaint; and that at the time these contracts were made she held in her possession the writing given to her in 1917 in which the committee notified her that she had been examined and found qualified to supervise and teach music in the public schools of the town, but that this writing had since been lost. To this complaint the defendant demurred on the same grounds stated in its first demurrer. The court, *Haines, J.*, overruled this demurrer because the "writing" mentioned in the amended complaint might be held to mean the certificate required by General Statutes, §§ 1007 and 1009. The defendant then filed an answer denying the material allegations of the complaint, and setting up a second defense in which it admitted the employment of the plaintiff as a supervisor and teacher of music in its public schools from September 3d, 1918, to February 14th, 1919, but without any express contract or for any fixed period of employment; and that during her employment her services were unsatisfactory because of her inefficiency, lack of tact, and her unbecoming conduct; that for these reasons the school committee dismissed her on February 14th, 1919; and that the plaintiff accepted her dismissal and never offered her services after that date. In reply the plaintiff denied the matters set up in the second defense.

Upon the trial of these issues, the plaintiff offered to prove by parol testimony the contents of the lost writing mentioned in her complaint, which she testified

was signed by the town's supervisor of schools at the request of the chairman of the committee appointed to examine and hire her to teach music, for the purpose of proving that that writing was sufficient to satisfy the requirements of General Statutes, § 1007. The court, *Keeler, J.*, rejected the testimony, holding that it appeared that the writing was not signed either by a majority of the school committee or by all of the committee appointed by them to examine the person desiring to teach.

The plaintiff also proposed to introduce in evidence the official records of the school committee containing their action upon the matters in question, but she claimed to have discovered that they were incomplete and incorrect. Thereupon, on the plaintiff's motion, the court discharged the jury, granted a continuance of this action, and permitted the plaintiff to file an application for an order in the nature of *mandamus* upon the secretary of the town school committee to correct their records by inserting therein certain specified unrecorded doings of the committee, and for a similar order upon the school committee requiring them, or the committee appointed by them, to make, execute and deliver to the plaintiff, as of October, 1917, a certificate authorizing her to teach and supervise music in the schools of the defendant town as long as desired, without further examination, unless specially ordered, according to the provisions of General Statutes, § 1007.

Having heard the parties upon the issue made upon these applications, the court found that the plaintiff was not entitled to the order prayed for, and adjudged that her application be denied and dismissed. From these judgments the pending appeals were taken.

*Arthur T. Keefe,* for the appellant (plaintiff).

Wardell *v.* Killingly.

*Charles E. Searls* and *Elbert L. Darbie,* for the appellee (defendant).

BURPEE, J. The demurrer to the original complaint was sustained because it was not alleged that the plaintiff had received a certificate authorizing her to teach in the defendant's public schools such as is specified in General Statutes, § 1007, and because General Statutes, § 1009, provides that "no teacher shall be employed in any school receiving any portion of its support from the public money until he has received a certificate of approbation in accordance with the provisions of" that chapter of the statutes in which that section is found. This interpretation of the law appears to have been accepted and followed in the subsequent pleadings and in the partial trial of the principal action, which was suspended to permit the plaintiff, under General Statutes, § 6065, to make applications for orders by the court which should finally secure for her a certificate of the kind supposed to be required. From these judgments denying and dismissing these applications, the plaintiff appealed. In this court, the defendants filed motions to dismiss these appeals, which raised only the question whether those judgments were final judgments, from which appeals to this court might be taken. It was held that they were. 96 Conn. 718, 115 Atl. 539. Now, consequently, the assignments of errors made in the appeals are first brought to our consideration.

The court below has found that a fully-authorized committee, appointed by the school committee of the defendant town for the purpose, examined the plaintiff in October, 1917, respecting her qualifications to teach and supervise music in the town's public schools; that after she had given them a practical demonstration of her ability and qualifications, they concluded that

she was a suitable and qualified person for that work, and decided to employ her for the school year of 1917 to 1918, and sent her a letter notifying her accordingly; that this action was approved by the town school committee; that the plaintiff performed and was paid for her services during that year; that near the end of that year, the town school committee agreed to employ the plaintiff in the same capacity during the succeeding year at the increased salary of $800, and so notified her; that she accepted the engagement and continued to teach and supervise music in the defendant's public schools until she was discharged by the school committee in February, 1919, and that she was paid by the town a proportionate part of the salary agreed upon. The court has also found that the plaintiff was never examined respecting her qualifications to teach any subject except music. It is admitted that no certificate authorizing the plaintiff to teach in any public school, signed as prescribed by General Statutes, § 1007, has been given to the plaintiff.

Submitting to the decisions of the trial court in the principal action, the plaintiff made these ancillary applications in which she asked the court to order the school committee, or the committee by them appointed, to make and give her such a certificate as it held to be required by the statute. In these appeals, while she maintains that the decision on the first demurrer and all subsequent rulings which followed it were erroneous, she contends further that she was in fact legally employed to supervise and teach music in the defendant's public schools although she had not been examined in the branches of study named in General Statutes, § 1007, and had not received the certificate specified in that section and required in § 1009.

It should be noted that music is not one of the branches of instruction which the laws of the State

specifically require to be taught in public schools. It has not been regarded as a part of the education which the public schools are primarily intended and sustained to supply at the public expense. It is not an essential element of the teaching of children to fit them to become good citizens, although it might be considered a desirable addition by the people of some towns. Apparently influenced by such considerations, in 1884 the General Assembly passed an Act to permit any town at its annual town meeting to direct its school committee "to employ one or more teachers to give instruction in the rudiments and principles of vocal and instrumental music in its several schools," and provided that "the salary of such teachers shall be paid by such town." General Statutes, § 856. That meant that the people of any town might, if they desired and were willing to bear the expense, add music to the branches which by law must be taught in its schools; but it did not place music within the terms of the statute which was designed to compel and provide for the teaching of those subjects which were deemed necessary and which the law has declared shall be taught. The State did not intend to pay for or undertake to control in any way the employment of teachers of this optional subject. They are not engaged nor called upon to teach any of the required branches. Their services are expected to be occasional and outside of the work which must be done by the regular teachers, and with which and its influence on the practical training of children to become useful citizens they are not to interfere or be responsible for. No sufficient reason is apparent, and no technical construction of the statute should be made, whereby such teachers may not be employed without examination and qualification respecting other branches. By this exception the high standards set up and maintained by the

public school system of the State need not be lowered;
for it is not to be assumed that the proper school of-
ficials of any town will fail to satisfy themselves con-
cerning the moral character of any person whom they
may consider for employment in any capacity, or con-
cerning his ability to render the specific services to be
required of him. No examination of a teacher of music
is prescribed in any statute. But when drawing and
hygiene were added to the branches of study required,
the statute expressly provided that the persons em-
ployed to teach those branches should be examined
and found qualified to teach them. Nor is it specified
by any statute that a particular certificate shall be
given to a teacher of music. The reasonable inference
and conclusion is that, if the responsible officials of a
town, using their reasonable discretion in any appro-
priate manner, have found a person whom they deem
qualified to teach music and satisfactory to them in
other respects, they may make a legal contract to em-
ploy that person, on such terms and for such time as
may be mutually agreed upon; and they may notify
that person of their conclusion by any means they see
fit. In this case, the trial court has found that the
plaintiff gave to the committee fully authorized to
hire a person to supervise and teach music in the de-
fendant town a practical demonstration of her ability
and qualifications, and that they concluded that she
was a desirable and qualified person to do such work;
that they decided to employ her and sent her a letter
informing her of their action; and that after one
year's employment, the town school committee agreed
to employ her during another year and so notified
her. We think that these proceedings satisfied all
the requirements of the law or of public policy, and
effected a legal contract. It was not necessary
that any certificate of approbation or any other

writing in any prescribed form should be given or received.

It is true, as the defendant points out, that General Statutes, § 1009, declares that no teacher without the specified certificate of approbation shall be employed in any school receiving any support from "public money," and that the schools of the defendant town receive a portion of their support from the State treasury. The defendant claims that the words "public money" mean all money raised by taxation. If that were true, the words which were evidently inserted to define the class of schools which the prohibition was to affect, would be meaningless, because all public schools are supported by means of taxation, and the prohibition could not affect any but public schools. We think the words in the first clause of this section mean what they mean in the second clause, and in the original Act and in other sections of the statutes now in force which provide for the support of public schools: i. e. money of the State appropriated by law for that purpose and distributed from the State treasury. But, as we have said, we do not think that this restriction affects the teacher of any subject outside of those which the State prescribes and for the teaching of which it undertakes to help to pay. And this seems to be the intention expressed in the second clause of this section, which declares that any teacher without a certificate shall not "be entitled to any wages, so far as the same are paid out of any public money appropriated to schools." That does not mean that no teacher shall be entitled to any wages paid out of other money. Construed with § 856, it means only that if a town employ a teacher of music, it must pay her out of money of its own, obtained from the income of the town deposit fund or other town funds, or from a town tax, or any other resources outside of the State treasury. General Statutes, Chap. 58.

This specific statute permitting the employment of teachers to instruct in music in the public schools was enacted in 1884, when the statutes containing the general provisions relating to the examination and qualification of teachers in specified branches, and to the giving of a particular certificate of approbation, had for many years been a part of our laws compelling and regulating the education of children in public schools. "It is a well-settled principle of construction that specific terms covering the given subject-matter will prevail over general language of the same or another statute which might otherwise prove controlling." *Kepner* v. *United States*, 195 U. S. 100, 125, 24 Sup. Ct. 797; *Jackson* v. *Chicago, R. I. & P. Ry. Co.*, 102 C. C. A. 159, 178 Fed. Rep. 432; *Martin* v. *Election Commrs.*, 126 Cal. 404, 411, 58 Pac. 932; *McGavisk* v. *State, M. & E. Ry. Co.*, 34 N. J. L. 509, 511; Black on Interpretation of Laws (2d Ed.) pp. 325–330; Beal on Rules of Legal Interpretation (2d Ed.) p. 374. The application of this principle withdraws § 856 from the terms of §§ 1007 and 1009.

Since, therefore, it was not necessary that the plaintiff, who desired to supervise and teach music in the defendant's public schools, should have been examined and should have received a certificate in accordance with the provisions of §§ 1007 and 1009 of the General Statutes, the holding of such a certificate was not a condition precedent to a legal contract of employment for that service which the plaintiff must allege and prove. She did not need and therefore was not legally entitled to the relief she asked for in her applications for *mandamus*. Hence they were properly dismissed. The action may be resumed and pursued, if the parties desire, under the pleadings in the original complaint and answer, as if these applications had not been made or were a dead graft lopped from the trunk of a tree.

It appears that the defendant Marland, the secre-
tary of the school committee of the defendant town,
had no information concerning any vote or action of
the committee which had been omitted from its records
and which it was his duty to enter. Evidently he could
not do what the plaintiff asked that he be ordered
to do. The application relating to him was necessarily
denied.

There is no error in the judgments denying and dis-
missing the applications for *mandamus*, and the cause
is remanded to be proceeded with according to law.

In this opinion the other judges concurred.