NATHANIEL CORDANO'S APPEAL FROM COUNTY COMMISSIONERS.

First Judicial District, Hartford, May Term, 1917.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

Chapter 282 of the Public Acts of 1915, authorizes the county commissioners, in the exercise of their discretion, to allow the "transfer" of an existing liquor license which does not change the location of the saloon, notwithstanding it is within two hundred feet in a direct line from a church edifice. *Held* that such authority was not vitiated or impaired by the fact that the applicant for the transfer acquired his property interest in the license, not directly from the

Cordano's Appeal.

original licensee, but by assignment from a judgment creditor of such licensee who had bought in the license at an execution sale and had not himself attempted to qualify under it.

The word "transfer" of a liquor license, as used in our statutes (Public Acts of 1915, Chapters 148 and 282), refers not to the dealings of the parties whereby the property interest passes, but to the transfer of the right to sell which follows the consent of the county commissioners.

It is immaterial whether the license, as representing an inchoate right to sell, was obtained by a third person through a voluntary assignment, or by purchase at an execution sale. In either case, if the third person applies for leave to sell, he must take such steps as an applicant for an original license would be required to take (Public Acts of 1915, Chap. 36); but in passing upon his application when presented, the county commissioners are to be governed by the provisions touching "transfers."

The law of this State recognizes to the fullest extent the quality of property in a liquor license, and there is no reason why the owner of such a license—whether he has himself become a licensee under it or not—may not dispose of it as a piece of property to another who may make application to the county commissioners to sell under it, not as an original applicant, but as a transferee.

The public is vitally concerned with the character and suitability of the vendee of a liquor license who seeks to operate under it, but it has no interest in a vendee who merely passes along his ownership in the license.

As an applicant for leave to sell, an assignee of an execution purchaser of a liquor license can stand in no better position than his assignor would have occupied had he made the application.

The applicant in the present case merely requested a transfer of the liquor license "now in the name of" the original licensee, and described the location of his saloon. *Held* that the fact that the assignment of the license to the applicant had not been perfected at the date of his application, was immaterial, and afforded the remonstrants no ground for charging the applicant with fraud or misrepresentation.

Argued May 1st—decided June 14th, 1917.

APPEAL by a taxpayer of the town of Winchester from the action of the County Commissioners of Litchfield County in granting the transfer of a liquor license to one James H. Davis, taken to and reserved by the Superior Court in Litchfield County, *Bennett, J.*, upon an agreed statement of facts, for the advice of this

court. *Superior Court advised to affirm the order of the County Commissioners.*

In 1915 the county commissioners of Litchfield County granted to T. J. Sullivan a license to sell spirituous and intoxicating liquors at 215 Main Street, in Winsted, expiring October 31st, 1916. In June, 1916, this license was sold on execution against Sullivan. The Yale Brewing Company was the purchaser. That company did not qualify as a licensee under the license, but sold the same to one Davis, who did apply on July 31st, 1916, for a transfer of the license to him.

Subsequent to November, 1915, but prior to the date of Davis' application, a church edifice had been built and opened for services within two hundred feet of the saloon. A remonstrance was filed to Davis' application upon the ground of the proximity of the church to the saloon. Upon the hearing before the commissioners no witnesses were produced to establish the unsuitability of the place, but the facts, as to its proximity to the church, were agreed upon as the facts upon which the commissioners' decision was to be rendered. The claim was made in behalf of the remonstrants that the application was to be regarded as an original one, and that, therefore, the prohibition of the statute against the granting of a license for a place within two hundred feet from a church edifice was applicable to the situation, and forbade the transfer of Sullivan's license to Davis. This claim was overruled and the application granted. From this action the appellant, who was one of the remonstrants, appealed.

Davis is a suitable person to receive a license.

*Frank B. Munn,* for Cordano, the remonstrating taxpayer.

*Walter Holcomb,* for Davis, the applicant for a transfer.

*John T. Hubbard,* for the County Commissioners.

PRENTICE, C. J.   The stipulation of counsel upon
which this reservation was made limits the questions,
whose answers should determine the judgment to be
rendered by the Superior Court under our advice, in
substance, to two, as follows: (1) Was the county com-
missioners' action in granting Davis' application for
a transfer to him of Sullivan's license, in violation of
the provisions of the statute touching licenses for places
located within two hundred feet of a church; and
(2) was Davis' application a fraudulent one?

Any question that might have been made in the
Superior Court, that the county commissioners erred
in their exercise of discretion in granting the applica-
tion, is waived.

It appears to be conceded by the remonstrant ap-
pellant, that if Davis had received a transfer from
Sullivan his application to the commissioners would
not have encountered the church prohibition.   Such,
certainly, would have been the case, since the passage
of Chapter 282 of the Public Acts of 1915, which em-
bodies that prohibition, specially excepts from its
operation transfer applications, and leaves the decision
in their case to the discretion of the commissioners in
view of the circumstances of each particular case.

Davis, however, did not hold an assignment to him-
self from Sullivan, the licensee.   His right to the license
came to him from the Yale Brewing Company, which
had purchased it upon an execution sale, and had
never qualified as a licensee under it.   The remon-
strant's contention is that under such conditions Davis
did not occupy the position of one who was entitled
to a transfer of the license within the meaning of our
license statutes, and, therefore, could not avail him-
self of the exceptions provided in Chapter 282 of the

Public Acts of 1915 in cases of transfer. His claim is that the exception made in that Act in favor of transfers of licenses, refers only to such as attend the passing of the ownership of the license directly from the licensee to the applicant for a transfer and without the intervention of any other person's ownership of the license, and that all other persons not so deriving title to the license appear before the county commissioners as original applicants and subject to the regulations governing such applicants. In support of this position he points to Chapter 148 of the Public Acts of 1915, where it is provided that any licensee, or in case of his death his administrator or executor, may, with the consent of the county commissioners, transfer his license. This, he says, is inclusive of all transfers which the law recognizes as such, and confines the power to make assignments, which by the approval of the county commissioners may become transfers, to licensees.

This construction of our statute is exceedingly narrow and technical and does not comport with sound reason. It reaches not only those who, as here, are purchasers of a license at an execution sale, but also those who hold voluntary assignments from the owner of a license, provided they have not put themselves in a position to engage in the liquor business under its authority. We search in vain for a practical reason for the distinction thus made between licensed and non-licensed owners of a license, in the matter of their competency to make an assignment of the license which may be perfected as a transfer by the action of the county commissioners. Especially hard is it to find a reasonable basis for such distinction, since ownership by purchase and assignment does not carry with it the right to utilize the license in the conduct of the business. In every case, one who acquires an out-

standing license is required to obtain the approval of the county commissioners before he can sell under it. As the license authorities have reserved to them the power to dictate as to who, among assignees, may exercise the franchise by becoming sellers, and are called upon in every case to exercise that power, it is difficult to discover what abuse can possibly arise from making assignees of non-licensed persons transferees of the license, which is not to be anticipated in the case of assignees of licensed persons. The public interest is not concerned with the character and suitability for the conduct of the liquor business of a vendee of a license who does not propose to operate under it. What is its vital concern is the character and suitability of one who applies for leave to sell under it.

Our law recognizes to the fullest extent the quality of property in a license. It is property having a recognized pecuniary value and the subject of sale, attachment, levy, or replevy. *Sayers' Appeal*, 89 Conn. 315, 317, 94 Atl. 358; *Quinnipiac Brewing Co.* v. *Hackbarth*, 74 Conn. 392, 395, 50 Atl. 1023. As property and the subject of sale, the owner may prima facie at least sell it and place the purchaser in his position as owner. What is there to impose restraint upon this power of substitution of owners, so that only one class of them, to wit, those who have qualified as licensees under the license are free to make the substitution as fully and completely as the law in other respects permits it to be made? The statutes impose none expressly, and none is to be found by way of implication unless the remonstrant's construction of Chapter 148 of the Public Acts of 1915 is to be accepted as correct. As we already have had occasion to observe, practical reasons in support of that construction are not apparent. On the other hand, it is easy to discover reasons, and cogent ones, in opposition to it. We are of

the opinion that the owner of the license, whether or not he has qualified to sell under it, may sell and assign it as a piece of property to another who may make application to sell under it as a transferee.

But the remonstrant is not driven to rely upon the broad proposition just discussed. He advances a more narrow one based upon that portion of Chapter 36 of the Public Acts of 1915, which provides that a license sold upon execution shall for its unexpired term be as valid in the hands of its purchaser as in the hands of the original licensee, "provided before such purchaser may avail himself of the benefit of such license, he shall comply with all the requirements of law relative to the procuring of an original license." His claim is that here, by implication at least, is a direction that an execution purchaser, and of necessity therefore his assignee, must, if he would avail himself of any beneficial use of the purchased license, appear before the county commissioners in all respects as an original applicant and be governed by all the statutory regulations concerning the granting of licenses to such applicants. As one of these regulations is the prohibition of the issuance of a license to sell at a place located within two hundred feet of a church edifice, he says that it follows that an execution-purchaser applicant comes within the operation of that prohibition.

He is, of course, correct in his statement that an assignee of an execution purchaser can stand in no better position, as an applicant for leave to sell, than would his assignor if he were making such application. If it be so that the law provides a special rule for the case of an execution purchaser, so that he is made to occupy a different and less advantageous position when he seeks to utilize his purchase by qualifying as a seller, from that occupied by voluntary assignees of licensed persons, then, without doubt, every owner

under him of the license stands in no better position. The controlling question, therefore, is, does our law make execution purchasers a class apart from all other purchasers and subject them, when they seek to avail themselves of their purchases, to different and more stringent regulations than those to which all other purchasers are subjected?

In answering this question the particular statutory provision which alone is relied upon as accomplishing that result, should be read in connection with the other provisions touching the same general subject, and such construction, consistent with the language used, given to it as will make a harmonious and consistent whole. In arriving at that construction, the evil sought to be avoided should be borne in mind.

The evil which our law governing transfers of license privileges seeks to avoid, manifestly is the sale of spirituous and intoxicating liquors by persons whose fitness to do so has not been passed upon and approved by the licensing authorities. Our policy in that regard is clearly indicated by our statutes. We insist that every would-be seller shall present his application for leave to sell to the county commissioners, and that they, after a formal hearing upon a prescribed notice, shall pass upon his fitness to exercise the desired privilege. This requirement extends to everyone, whether he be an original applicant or one desiring to sell as a substitute licensee.

When the applicant seeks to exercise the right which was originally given to another, a transfer of the license becomes necessary. That transfer is not accomplished by a purchase and assignment of the license. It is accomplished when, and only when, the county commissioners have signified their consent to the substitution of licensee. Public Acts of 1915, Chap. 148. Our statutes make it clear that the word "transfer," as

used in them, refers not to the transaction as between individuals whereby the property interest passes, but to the transfer of the right to sell which follows the county commissioners' consent. It matters not whether the license, as representing an inchoate right to sell, was obtained by a third party through a voluntary assignment, or upon execution sale. There is no "transfer" within the meaning of our statutes, until the county commissioners have given their consent to the substitution of parties, and there is one in either case when that consent is given.

Bearing in mind that fact, and also that Chapter 282 of the Public Acts of 1915, the latest in the order of enactment of the license statutes, in unrestricted language exempts transfers from the operation of the prohibition against the grant of licenses for a place located within two hundred feet of a church edifice, and also that no reasons are apparent for the making of a distinction between purchasers of different classes, it is reasonably manifest that the two statutory provisions should be read, the one as prescribing the applicant's course of action, and the other the county commissioners' duty in passing upon his application when duly presented. By force of Chapter 36 of the Public Acts of 1915, the applicant must proceed in the matter of application in all respects as an original applicant is required to do. By virtue of Chapter 282 of the Public Acts of 1915, the county commissioners, in passing upon the application when thus presented, are to be governed by the regulations touching transfers.

The remonstrant's claim, that the plaintiff's application was fraudulent, is based largely upon his assumption of an alleged false position in asserting that he desired a transfer of Sullivan's license, and in asking for such transfer when he was in no position to claim it. What we have said upon that subject disposes of

that feature of the charge of fraud. The charge is also based in part upon the fact that at the time the application was made the Yale Brewing Company had not in fact perfected its assignment to the applicant, although it was perfected prior to the hearing before the commissioners. Nowhere in the application, or in the applicant's affidavit accompanying it, is it said that the assignment had been made. The application was for a transfer of Sullivan's license to Davis, and nothing more. We discover no misrepresentation of fact by Davis, nor possibility of misunderstanding or misconception on the part of the commissioners as to any material matter involved in their decision. It does not appear but that the situation was fully understood by all, and it is of no practical importance whether or not the assignment to Davis was in form executed at the date of the application.

The Superior Court is advised to affirm the order of the county commissioners.

No costs in this court will be taxed in favor of either of the parties.

In this opinion the other judges concurred.