STATE OF CONNECTICUT EX REL. WILLIAM B. PAPE
*vs.* PETER H. DUNAIS.

STATE OF CONNECTICUT EX REL. WILLIAM B. PAPE
*vs.* JOHN T. DERWIN.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued November 6th—decided December 3d, 1935.

*Vincent A. Scully,* with whom, on the brief, was
*Charles S. O'Connor,* for the appellants (defendants).

*J. Warren Upson,* with whom, on the brief, was *Nathaniel R. Bronson,* for the appellee (plaintiff).

HAINES, J. The relator alleged that Thomas F. Dillane and Henry O'Connor were elected Republican and Democratic registrars respectively at an election in Waterbury in October, 1933, and both qualified as such; that Dillane appointed Albert O. Faller as deputy Republican registrar and O'Connor appointed Michael F. Slavin as deputy Democratic registrar, both of whom qualified as such deputy registrars; that Dillane resigned May 21st, 1935, and O'Connor resigned May 16th, 1935, and both resignations were accepted; that on May 22d, 1935, the mayor of Waterbury appointed the respondent Dunais as Republican registrar and on May 16th, 1935, the respondent Derwin as Democratic registrar, claiming to act pursuant to the charter of the city of Waterbury, and both appointees were sworn in and assumed the office of registrar; that these appointments by the mayor were without legal warrant or right and that the named incumbents had usurped and were continuing to usurp the office of registrar, since by reason of the provisions of General Statutes, § 561, it is provided that upon the resignation of a registrar the deputy registrar shall become registrar and himself appoint a deputy.

The respondents' pleas in effect were that upon the resignations of the registrars their offices became vacant, and that these respondents were appointed by the mayor under and pursuant to the provisions of the charter of Waterbury, Special Acts, 1931, p. 568, § 25, which reads: "Any vacancy in any elective office other than that of mayor shall be filled by appointment by the mayor for the unexpired portion of the term," and therefore the respondents had not usurped and were not usurping the offices of registrar.

The pleadings presented to the trial court, and by appeal present to this court, the controlling question of whether the resignations of the registrars created a "vacancy." If such vacancies were created, it may have become the duty of the mayor by the terms of the charter to fill them, but if no vacancies were created there existed no duty or authority of the mayor to make the appointments. The trial court held that no vacancies in the sense intended by the Legislature were created and that the action of the mayor was unauthorized and void, and it was adjudged that the respondents be ousted and excluded and prohibited from exercising the functions of registrar.

In examining the provisions of § 561 of the General Statutes to determine its meaning and intent, we note that its language is specific in stating the powers and duties attaching to the offices of registrar and deputy registrar. The former is required to appoint a deputy and he is authorized to fill any vacancy that occurs in the latter office; he is required to file with the town clerk a certificate of his appointments to the office of deputy registrar. The deputy registrar is empowered to assist the registrar when required and to discharge the duties of the registrar when the latter is absent or unable to act. In case of the death, removal or resignation of the registrar, it is specifically provided that the deputy registrar "shall become registrar, and appoint a deputy, and shall file with the town clerk a certificate of such appointment. . . ." Then follows the only provision in relation to a vacancy in the office of registrar: "In case a vacancy shall exist in the office of registrar in consequence of a refusal or failure to accept the office or a failure to have appointed a deputy registrar, the selectmen and the town clerk shall fill such vacancy. . . ."

We deem the intent of this statute to be to provide

for four possible contingencies: (1) the absence or the inability of the registrar to act, (2) the registrar's death, removal or resignation, (3) the registrar's refusal or failure to accept the office, and (4) his failure to have appointed a deputy registrar. In the first contingency the deputy registrar shall perform the duties of his chief, and in the second he shall at once become the registrar. It is quite obvious that in these two provisions the Legislature did not intend to provide for the filling of a vacancy. Manifestly the absence or inability of the registrar did not create a vacancy and there was no interim contemplated between the death, removal or resignation of the registrar and the succession of the deputy. There was at all times an incumbent of the office charged with the duties of a registrar.

The respondents argue that the Legislature must have contemplated that some interval would exist between the death, removal or resignation of the registrar and the succession of the deputy. They base this upon General Statutes, § 563, which provides that each registrar, "before entering upon the duties of his office, shall be sworn, and a certificate of such appointment shall be filed and recorded in the office of the town clerk." We cannot concur in this view. Whether the deputy upon assuming the designation of registrar is required to take a new oath and file a certificate, quaere. Whether one is elected to the office of registrar or becomes registrar by and under the statutory provision for succession, the taking of the office and the filing of a certificate would necessarily follow that incident, being simply a condition to be met by him before he enters upon his duties. In neither case can it be said that anything like a vacancy exists in the interval between the election or succession and the taking of the oath and filing of the certificate. On the other hand, the third and fourth contingencies are the

only ones which this statute recognizes as creating a vacancy, and they manifestly have no application to the facts of this case.

We conclude therefore that no vacancy in the office of registrar within the meaning of the statute, resulted from the resignations of Dillane and O'Connor. At once, without any interval, their deputies automatically became registrars. It also follows that the charter provisions upon which the respondents rely, have no application to the facts of this case. While these conclusions are drawn from the language of the statute itself, and are determinative of the question at issue, there are considerations which strongly support them.

It is a legal presumption that the Legislature in framing the charter, was well aware of the existing provisions of the statute, and a further presumption that there was no intention to enact conflicting provisions, particularly in relation to the important office of registrar of voters.

"The presumption is that the Legislature, in enacting that law, did it in view of existing relevant statutes, and intended it to be read with them, so as to make one consistent body of law. 'The General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces.'" *Hartley* v. *Vitiello*, 113 Conn. 74, 82, 154 Atl. 255.

We are to assume that the Legislature recognized the vital necessity of an incumbent of the office who could act at any and all times. To have created a vacancy to be filled by the mayor would have brought about a situation where the latter official could by failure or refusal to act, have prevented or greatly delayed the operation of the elective machinery. The

specific provisions for instant succession by the deputy when the registrar resigned, seems well calculated to avoid such possibility. "We cannot assume that a legislative enactment is devoid of purpose, and we must seek the object to be accomplished and the purpose to be subserved." *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 193, 167 Atl. 709. "Sound construction requires that the statute be considered 'in the light of its history, its language, the purpose it is designed to serve and the circumstances surrounding its enactment.' " *Savings Bank of Rockville* v. *Wilcox,* supra; *Connecticut Mutual Life Ins. Co.* v. *Rogers,* 113 Conn. 14, 25, 154 Atl. 246.

Even if it were so that the charter and statutory provisions here were repugnant, it would be necessary to hold that the specific provisions of the latter relating to the office of registrar were to be followed rather than the provisions of the former relating to elective officers generally. *Wardell* v. *Killingly,* 97 Conn. 423, 433, 117 Atl. 520; *Kelly* v. *Dewey,* 111 Conn. 281, 293, 149 Atl. 840. "Implied repeal of a general law by a subsequent private act is not favored, will not be assumed, and will not be held to take place unless there is such manifest repugnancy between the two that they cannot be reconciled and operate concurrently." *Arsenal School District* v. *Hartford,* 120 Conn. 348, 363, 180 Atl. 511. We may add that the word "vacancy" as used in speaking of the office of mayor in § 24 of the charter, and the word "vacant" as used in the rescript of *Post* v. *Dillane,* 119 Conn. 655, 667, 178 Atl. 595, to which our attention is called, are not determinative of the question raised in the present case and were not used in the sense intended by the charter and statutory provisions which we have discussed. In that rescript we were applying the provisions of § 708 of the General Statutes which require the court, upon

the finding of due cause, to declare the office of registrar or deputy registrar "vacant." This is merely the equivalent of saying that the incumbent has been removed from the office, which must then be filled "as required by law." This is the "removal" referred to in § 561, which then provides in terms for a successor.

There is no error.

In this opinion the other judges concurred.