HERBERT JENNINGS ET AL. *v.* THE CONNECTICUT LIGHT AND POWER COMPANY ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued December 3, 1953—decided February 9, 1954

*Hereward Wake,* for the plaintiff The Greater Norwalk Improvement Association.

*John H. Mountain,* for the plaintiff city of Norwalk.

*John R. Cuneo,* for the plaintiffs Wilson Point Property Owners' Association, Inc., et al.

*Robert B. Seidman,* for the named plaintiff et al.

*Walter F. Torrance* and *Walter F. Torrance, Jr.,* for the named defendant.

*Leon K. Paris,* for the defendants The Harbor View Company et al.

*Robert B. Devine* appeared for the defendants Stursberg et al.

BALDWIN, J. This is an action for a declaratory judgment. The individual plaintiffs, Herbert Jennings and Priscilla B. Sheldon, are resident taxpayers and property owners in Norwalk. The plaintiffs Wilson Point Property Owners' Association, Inc., and Village Creek Homeowners' Association, Inc., are Connecticut corporations, without capital stock, whose members are owners of real property located at Wilson Point and at Village Creek in Norwalk. The plaintiff The Greater Norwalk Improvement Association is an unincorporated association composed of residents of Norwalk and is devoted to various public purposes, among which is opposition to the encroachment of industry into residential areas. The named defendant, a corporation chartered by the legislature, is engaged in generating and distributing electricity throughout the state. 11 Spec. Laws 158, 17 id. 833, 18 id. 106. The defendants Herbert J. Stursberg, Russell Frost, III, John Canevari, George Brazil and Robert B. Douglas are members of the zoning commission of Norwalk. After the action was instituted, The Harbor View Company, a nonprofit Connecticut corporation whose members are the owners of real estate at Harbor View, and Charles D. Steurer, Jr., a resident taxpayer and property owner at Harbor View, were joined as parties defendant. The city of Norwalk moved to

intervene and was made a party plaintiff. The named defendant filed a counterclaim against the defendants The Harbor View Company and Charles D. Steurer, Jr., in which it also asked for a declaratory judgment.

After the pleadings were closed, the parties entered into a stipulation reserving the cause to this court for its advice on the questions set forth in the footnote.[1] It was further stipulated that the facts should be those admitted in the pleadings and contained in exhibits designated A to J inclusive. These exhibits, in substance, comprise the record of the proceedings before the zoning commission of Norwalk and include a transcript of the testimony taken at the hearing and the order issued by the commission.

The facts are as follows: The defendant The Connecticut Light and Power Company, hereinafter called the company, purchased a substantial area of land in the southern part of Norwalk. A portion

---

[1] "(a) Is the Order of the Zoning Commission of the [City] of Norwalk, dated January 19, 1953, set forth as Exhibit A in the Complaint, valid?

"(b) Is it proper in this proceeding for the Court to enter a Declaratory Judgment determining the constitutionality, construction and scope of Section 5646 of the General Statutes of Connecticut, Revision of 1949?

"(c) If the answer to the preceding question is in the affirmative, is Section 5646 constitutional?

"(d) If the answer to Question (b) is in the affirmative, will the Public Utilities Commission on the Appeal from the aforesaid Order of the Zoning Commission that is now pending before it, have the right and power as provided in Section 5646, 'to affirm or modify or revoke such [Order] or make any [Order] in substitution thereof'?

"(e) If the answer to Question (b) is in the affirmative, will the Public Utilities Commission, on the aforesaid Appeal, have the right and power to authorize The Connecticut Light and Power Company to locate its proposed steam plant on its property in Norwalk despite the provisions of any general or special statutes or any ordinances relating to municipal zoning or planning in Norwalk?"

of this land, known as Manresa Island, is a peninsula jutting into Long Island Sound and is almost completely surrounded by water. Most of the land owned by the company, including Manresa Island, is zoned as residence B under the zoning regulations of Norwalk. It is bordered on the north and east by residence B zones and on the west by a light industrial zone. Jennings owns a residence which is located in the industrial zone adjacent to the company's property. Sheldon owns a residence at Wilson Point. The Wilson Point Property Owners' Association, Inc., represents the owners of property at Wilson Point, which is designated under the zoning regulations as a residence A zone. Wilson Point is west of Manresa Island and approximately half a mile distant, measured across the waters of the sound. The members of the Village Creek Homeowners' Association, Inc., own property located at Village Creek, so-called, which is in an area, zoned in part as light industrial and in part as heavy industrial, lying directly west and adjacent to the northerly part of the company's property. The southern end of it is slightly less than a quarter of a mile from Manresa Island. The city of Norwalk owns a public park at Calf Pasture Beach, which lies approximately one mile east of Manresa Island, across the mouth of Norwalk Harbor.

The company purchased its property for the purpose of erecting a steam plant on Manresa Island for generating electricity. It claims that the great increase in population in southwestern Connecticut and the consequent demand for electric current require the expansion of the company's generating facilities. It alleges that electricity can be produced at a lower cost if the generating facilities are located near the

area of demand, and a steam plant on Manresa Island is the most feasible and economical method of supplying the increased demand for electric current in southwestern Connecticut. It states that current is presently supplied to customers in this area from the steam generating plant located at Devon in Milford on the Housatonic River by means of cables over a right of way and that it would not be economically feasible to increase these cables or to enlarge the right of way to bring the needed additional current from Devon. The zoning regulations of Norwalk contain no provisions relating to public utilities except as they may be comprehended by the use regulations for the several kinds of zones prescribed by the zoning regulations.

On November 24, 1952, the company, purporting to act pursuant to the provisions of General Statutes, § 5646, brought a petition to the zoning commission reciting that it proposed to erect a steam plant on Manresa Island and that public necessity and convenience required the erection of such a plant. It requested the commission to enter an order regulating and restricting the location of the plant. After a hearing, at which the plaintiffs were represented, the commission found that there was a need for additional electric power in southwestern Connecticut which could be met by the proposed steam generating plant. It entered an order approving Manresa Island as the location for the plant and imposed twenty-three separate specific regulations upon the construction and operation of it. It is not necessary to set forth these regulations in detail. It suffices to state that they dealt precisely with the size, location and landscaping of the plant, the height of the stack, the handling and storage of coal, the prevention of fly ash and smoke, the con-

trol of noise, the disposal of waste material and the construction of cables connecting the plant with the inland system, in a manner calculated, in the opinion of the commission, to keep the objectionable features of the plant to a minimum. The plaintiffs claim that a steam plant on Manresa Island will be a source of danger and a nuisance, that it will be deleterious to health, and that it will greatly depreciate the value of their respective properties. They charge that the action of the zoning commission was in violation of the zoning regulations of the city and that the commission is without power to make any order respecting the location of the plant. The defendants The Harbor View Company and Charles D. Steurer, Jr., appealed from the order of the zoning commission to the public utilities commission.

At the threshold of the case, we meet a question of statutory construction. The company's application to the zoning commission of Norwalk for permission to erect a steam plant on its property at Manresa Island purported to invoke the power of that commission, under § 5646 of the General Statutes, to regulate and restrict the location of the proposed plant. The commission conducted its hearing and issued its order as though it had special authority under that statute to do so. The plaintiffs claim that the commission has no special powers to act and that the regulation and restriction of the location of the proposed steam plant was a matter solely within the cognizance of the zoning authorities of the city acting under their general powers and should have been treated as such.

To resolve this issue, it is necessary to determine the legislative intent expressed in § 5646. *Mad River Co.* v. *Wolcott*, 137 Conn. 680, 686, 81 A.2d 119; *State*

*ex rel. Stamford* v. *Board of Purchase & Supplies,* 111 Conn. 147, 161, 149 A. 410. To this end, we look to the wording of the statute, its history and its basic policy, as they may be disclosed by pre-existing legislation and the circumstances that brought about the enactment of the law under consideration. *State* v. *Cambria,* 137 Conn. 604, 606, 80 A.2d 516; *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 447, 86 A.2d 70. The statute is set forth in full in the footnote.[1] It first gives the selectmen of any town, the common council of any city and the warden and burgesses of any borough, within their respective jurisdictions, "full direction and control over the placing, erection and maintenance of any . . . wires, conductors, fixtures, structures or apparatus" of any public service company, including the power of designating the "kind, quality and finish thereof." It authorizes these municipal authorities to make all orders necessary to carry out their powers. This portion of the statute originated with the advent of telegraphy and the use of the highways for the erection of poles carrying wires for its transmission. Amendments from time to time adapted the section to telephone, electric and electric railway companies. The statute was legisla-

---

[1] "Sec. 5646. CONTROL BY LOCAL AUTHORITIES; APPEAL. Except as provided in section 5655, the selectmen of any town, the common council of any city and the warden and burgesses of any borough shall, subject to the provisions of section 5645, within their respective jurisdictions, have full direction and control over the placing, erection and maintenance of any such wires, conductors, fixtures, structures or apparatus, including the relocation or removal of the same and the power of designating the kind, quality and finish thereof, but no authority granted to any city or borough or a town planning, zoning, building, gas, water or electrical board, commission or committee created under authority of the general statutes or by virtue of any special act, shall be construed to apply to so much of the operations, plant, building, structures or equipment of any public service company as is under the jurisdiction of the public utilities commission, but such board, commission or committee, if it have the power to regulate

tive recognition of the control over public highways given to local authorities very early in the history of this state. *New York, N.H. & H.R. Co.'s Appeal,* 80 Conn. 623, 627, 70 A. 26; see *State* v. *Towers,* 71 Conn. 657, 666, 42 A. 1083. The language quoted appears in substantially its present form in § 3823, Rev. 1930; in § 3889, Rev. 1918; in § 3905, Rev. 1902; and in § 3946, Rev. 1888. The early history of legislation dealing with the use of highways for the stringing of wires, cables and car rails by public utilities is detailed at length in *New York, N.H. & H.R. Co.'s Appeal,* supra.

Two earlier legislative enactments bearing upon § 5646 are significant. As the statute appeared in the Revisions of 1888, 1902 and 1918, it gave to the public utility involved the right of appeal to a judge of the Superior Court. By an amendment in 1929, the right of appeal ran to the public utilities commission. Public Acts 1929, c. 154. Again, previous to 1915, control over the use of the public highways by electric service companies was left solely to the local authorities. In 1915, four years after the creation of the public utilities commission (Public Acts 1911, c. 128), the General Assembly prescribed that

and restrict the location of structures, trades, industries and business, may regulate and restrict the proposed location of any steam plant, gas plant, gas tank or holder, water tank or electric substation of any public service company. Any local body mentioned in this section and the appellate body, if any, may make all orders necessary to the exercise of such power, direction or control, which orders shall be made within thirty days of any application and shall be in writing and recorded in the records of their respective communities, and written notice of any order shall be given to each party affected thereby. Each such order shall be subject to the right of appeal within thirty days from the giving of such notice by any party aggrieved to the public utilities commission, which, after rehearing, upon due notice to all parties in interest, shall as speedily as possible determine the matter in question and shall have jurisdiction to affirm or modify or revoke such orders or make any orders in substitution thereof."

this commission "shall have exclusive jurisdiction and direction over the method of construction or reconstruction in whole or in part of every system used for the transmission of electricity, with the kind, quality, and finish of all materials, wires, poles, conductors, and fixtures to be used in the construction and operation thereof, and the method of their use, including all plants and apparatus used for generating electricity *located upon private property* upon which there are conductors capable of transmitting electricity to other premises in such manner as to endanger any person or property" (italics supplied). Public Acts 1915, c. 228, § 1; see Rev. 1918, § 3901; Rev. 1930, § 3832. Substantially this same language is now contained in General Statutes, § 5655. The opening proviso of § 5646 excepts from its operation the jurisdiction and direction over plants, apparatus and transmission lines conferred upon the public utilities commission by § 5655. See Rev. 1930, § 3823.

These two enactments manifest a recognition by the legislature that the control of the plants, apparatus and transmission lines of a public service company is a matter of more than local concern and one which should be under the supervision of a commission with state-wide jurisdiction. The second enactment is significant also because it gave to the public utilities commission control not only of the structures and transmission lines of public service companies which are located in the public highway but also of generating plants and other structures which are situated on private property.

Before considering the further amendments to § 5646, it is well to turn to the statutes relating to the public utilities commission to see if they disclose any legislative history or policy which might be help-

ful in finding the legislative intent. This commission was the successor to the railroad commissioners, first authorized in 1853. Public Acts 1853, c. 74, § 9. It is not necessary to detail the history of the railroad commissioners further than to state that succeeding legislatures confided to them ever increasing powers and responsibilities. Public Acts 1854, c. 75; Public Acts 1865, cc. 99, 100, 108, 134; Rev. 1866, p. 182, § 454 et seq.; Rev. 1875, pp. 15, 319, 331; Rev. 1888, §§ 3413-3432; Rev. 1902, §§ 3876-3902. These powers and responsibilities were transferred to the public utilities commission when it was created in 1911. Public Acts 1911, c. 128, § 12. There is no reason for citing the many statutes conferring additional powers upon this commission. It serves the purpose of this discussion simply to state that its powers and responsibilities have been enlarged and extended, which plainly indicates a policy on the part of the legislature to confer broad powers of regulation and control on it. General Statutes, § 5401, specifically enjoins the commission to "keep fully informed as to the condition of the plant, equipment and manner of operation of all public service companies in respect to their adequacy and suitability to accomplish the duties imposed upon such companies by law and in respect to their relation to the safety of the public and of the employees of such companies. The commission may order such reasonable improvements, repairs or alterations in such plant or equipment, or such changes in the manner of operation, as may be reasonably necessary in the public interest." The general purpose of that section, and of others not pertinent to this opinion, is stated to be "to assure to the state of Connecticut its full powers to regulate its public service corporations, to increase the powers of the public utilities commission and to promote

local control of the public service corporations of this state."

The rationale of our legislation dealing with the regulation and control of public service corporations by the state through a state commission was early expressed in *Cullen* v. *New York, N.H. & H.R. Co.,* 66 Conn. 211, 33 A. 910. In that case, the railroad company brought an application to the railroad commissioners for the alteration of a public highway so as to eliminate a grade crossing. The charter of New Haven gave to its common council exclusive control over highways. The claim was made that the railroad commissioners were without power to relocate any portion of the highway which was not within the limits of the railroad right of way. The commissioners ordered a relocation of the highway which resulted in the discontinuance of a substantial part of it outside of the railroad right of way. The court, sustaining the action of the commissioners, stated (p. 223): "A steam railroad is a road in the safe maintenance and operation of which the whole State is directly interested. It is therefore put under the supervision of a board of State officers, with extensive powers. Their authority sometimes trenches upon what would otherwise be within the exclusive jurisdiction of some particular municipality, and wherever it does, the latter must give way, for so only could any general policy of administration be carried out. The proper regulation of railroads, in their course through different towns, is a matter which is necessarily of more than local concern." If the state-wide interest in steam railroads furnished the reason for making the power of the railroad commissioners superior to that of local municipal officials in 1895, then, most assuredly, the same reasoning applies today with even greater emphasis to a public

utility supplying a service which almost everyone in the state requires daily. It is sound public policy that, as between state control and local control of a public utility furnishing a state-wide service, the local municipal authorities should play a secondary role where a clash of authority appears to exist. This principle has long been recognized in the interpretation of similar statutes which posed an apparent conflict between state and local control. *New York, N.H. & H.R. Co.'s Appeal,* 80 Conn. 623, 638, 70 A. 26; *Connecticut Co.* v. *New Haven,* 103 Conn. 197, 207, 130 A. 169; see *Connecticut Co.* v. *Norwalk,* 89 Conn. 528, 94 A. 992.

It may be pointed out that § 5401 specifically states that one of its purposes is to promote local control of the public service corporations as well as to assure to the state full powers to regulate such corporations. It has ever been the policy of this state to place in the hands of its local governments a large authority in the regulation of their local affairs. *Central Ry. & Electric Co.'s Appeal,* 67 Conn. 197, 219, 35 A. 32. The erection of a steam electric generating plant to meet a demand for electric energy far beyond the confines of Norwalk is, however, not solely a matter of local concern. As we pointed out in *Connecticut Co.* v. *New Haven,* supra, 209, the growth and development of public service corporations, their proper regulation in the public interest, and the incapacity of local government to supervise their activities in a uniform manner were responsible for the creation of the railroad commissioners and for increasing their powers. As other public service corporations came into being and spread the tentacles of their operation across town, city and county lines, the public utilities commission was created and empowered to regulate

them uniformly and in recognition of a public interest above and beyond the boundary of a single city or town. In the light of the history and evolution of § 5646 and the legislation dealing first with the railroad commissioners and then with the public utilities commission, at least up to 1935, it is apparent that local authority must give way to state-wide authority when the matter involved is more than one of purely local concern.

In 1935, § 5646 took its present form. General Statutes, Cum. Sup. 1935, § 1420c. In considering the language which was added, we will discuss certain portions of it seriatim. The language of the earlier revisions concerning the powers conferred upon local authorities was retained. This, read with what is now § 5645, gave the local authorities power with reference only to such structures as were located "over, on or under any highway or public ground." General Statutes, Rev. 1930, §§ 3822, 3823. There was added to it the following: ". . . but no authority granted to any city or borough or a town planning, zoning, building, gas, water or electrical board, commission or committee created under authority of the general statutes or heretofore created by virtue of any special act, shall be construed to apply to so much of the operations, plant, building, structures or equipment of any public service company as is under the jurisdiction of the public utilities commission, but such board, commission or committee, if it have the power to regulate and restrict the location of structures, trades, industries and business, may regulate and restrict the proposed location of any steam plant, gas plant, gas tank or holder, water tank or electric substation of any public service company." By this wording, the General Assembly conferred upon the local board or

commission empowered to adopt zoning regulations additional and specific authority to "regulate and restrict the proposed location of any steam plant . . . or electric substation of any public service company." We have already noted the fact that under § 5655 of the General Statutes the public utilities commission was given exclusive jurisdiction and direction over plants and apparatus of electric service companies located on private property and that properties and apparatus falling within the jurisdiction conferred by this statute were exempt from the jurisdiction of local authorities under § 5646. See Public Acts 1915, c. 228, § 1. Up to 1915, control, with certain exceptions, seems to have been divided. The agencies of local government had control of structures and apparatus in the highways. The public utilities commission supervised and controlled plants, equipment and operations on private property.

Prior to 1935, a general zoning law was enacted under which any city or town could adopt zoning regulations. Public Acts 1925, c. 242. Furthermore, this court had decided that a local zoning authority could deny to a public utility permission to erect a gas holder in a business zone. *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 155 A. 850. Here was a new and different power granted by the state to its municipalities. The legislative problem was how to accommodate the local power of zoning, administered through local agencies of government, to the state-wide power of public utility regulation exercised by a state agency. It is a rule of statutory construction that the legislature is presumed to know all the existing statutes and that when it enacts a law it does so in view of existing relevant legislation, intending the statute enacted to be read with the per-

tinent existing legislation so as to make one consistent body of law. *Hartley* v. *Vitiello,* 113 Conn. 74, 82, 154 A. 255; *Cordano's Appeal,* 91 Conn. 718, 725, 101 A. 85; *New York, N.H. & H.R. Co.'s Appeal,* 80 Conn. 623, 635, 70 A. 26. Then, too, it is a significant fact that § 1420c, now § 5646, amended a statute which was included in the body of statute law designated "Title 36. Chapter 202. Telegraph, Telephone, Illuminating, Power and Water Companies." It indicates a legislative intent to deal with the matter as one of public utility regulation rather than zoning. Terms of the titles of legislation are indicative of legislative intent. *Baker* v. *Baningoso,* 134 Conn. 382, 387, 58 A.2d 5; *State* v. *Muolo,* 119 Conn. 323, 330, 176 A. 401.

It is the plaintiffs' contention that by the enactment of § 5646 the legislature intended that local zoning authorities, acting as such, should have the sole power to regulate, restrict and, in the legal exercise of their discretion, prevent the location of any plant or structure of an electric service company within their jurisdiction. In other words, the plaintiffs contend that in operating under § 5646 a zoning commission is acting only under the authority of the zoning laws and is administering only those laws. If this is so, then the public utilities commission would be powerless to compel any electric service company to provide adequate service for the generation of electric energy, or to regulate or direct it in any way concerning its functions of public service, if, in so doing, the commission contravened any regulation or order of a local zoning authority. In short, local zoning authorities could deny to a public utility company the placing of any structure essential to its operation or so control or restrict its operations as to make them economically unfeasible or

render the company incapable of furnishing the service necessary to meet the public demand. Such a construction of § 5646 would result in the reversal of a legislative policy that has been followed for many years. It would mean the complete negation of the broad powers of regulation and direction specifically given to the public utilities commission in the interest of state-wide public welfare.

In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language. *Miller* v. *Colonial Forestry Co.*, 73 Conn. 500, 505, 48 A. 98; *Antman* v. *Connecticut Light & Power Co.*, 117 Conn. 230, 236, 167 A. 715; 50 Am. Jur. 280; see 2 Sutherland, Statutory Construction (3d Ed.) § 4507. That the legislature manifested no such intention is made clear from the language of § 5646 immediately following that just considered: "Any local body mentioned in this section and the appellate body, if any, may make all orders necessary to the exercise of such power, direction or control, which orders shall be made within thirty days of any application and shall be in writing and recorded in the records of their respective communities, and written notice of any order shall be given to each party affected thereby." The statute then goes on to state that each such order shall be subject to the right of appeal, by any party aggrieved, to the public utilities commission, which, after rehearing, upon due notice to all parties in interest, shall determine the matter in question and may affirm, modify or revoke the order or make any order in substitution of it.

This right of appeal includes not only an appeal from the local authorities mentioned in the first part of the statute but also from zoning authorities and commissions. That this is so is readily apparent

from a study of the amendments to the forerunners of § 5646, that is, § 3889 of the Revision of 1918 and § 3823 of the Revision of 1930. As has previously been stated, the first of these amendments, relating to appeals, occurred in 1929. It shifted the right of appeal to a judge of the Superior Court over to the public utilities commission. Public Acts 1929, c. 154; *New York, N.H. & H.R. Co.'s Appeal,* 80 Conn. 623, 638, 70 A. 26. When the amendment of 1935 hereinbefore referred to was made, conferring, for the first time, power upon local zoning authorities and commissions, the portion of the statute relating to appeals was also changed. Cum. Sup. 1935, § 1420c. The language of this change is very significant. The statute states that "[a]ny local body mentioned in this section . . . may make all orders necessary to the exercise of such *power, direction or control*" (italics supplied). "Any local body" means each and every one of those referred to in the section. The "power" referred to is the power conferred upon local zoning authorities and commissions to regulate and restrict. "[D]irection or control" is the term used in connection with the authority given to selectmen, common councils, wardens and burgesses by the first part of the statute. The statute then provides specifically, with reference to appeals, that "[e]ach such order shall be subject to the right of appeal" to the public utilities commission. "Each such order" refers not only to those made by selectmen, common councils, wardens or burgesses but also to those made by zoning authorities or commissions.

The plain intendment of the legislature is that a public utility company, in this instance the named defendant, if it desires to erect a steam plant in a city or town where there are a zoning commission and

zoning regulations, shall apply to the zoning commission, if that is the local agency which has the authority to adopt zoning regulations, for permission to locate its plant at the place proposed. The zoning commission acts as a special agency of the state. In that capacity, it exercises its zoning powers in the manner prescribed in § 5646 and subject to an appeal to the public utilities commission. The zoning commission thereby is in a position to appraise not only the welfare of its own community but also the larger welfare of the state as a whole.

The designation of a local zoning agency to perform a joint function with the state is not new in our statute law. Under General Statutes, §§ 2538, 2539 and 2540, zoning boards of appeal are clothed with authority to pass upon the suitability of the proposed location of a gasoline station before a license to sell gasoline at the location can be issued by the commissioner of motor vehicles. *Dadukian* v. *Zoning Board of Appeals,* 135 Conn. 706, 712, 68 A.2d 123; *Colonial Beacon Oil Co.* v. *Zoning Board of Appeals,* 128 Conn. 351, 354, 23 A.2d 151; *Berigow* v. *Davis,* 116 Conn. 553, 556, 165 A. 790.

We conclude, therefore, that the zoning commission of Norwalk, in conducting its hearing and issuing its order, was acting as an agency of the state designated to fulfil a special function under § 5646, and that it properly received the company's application with regard to the location of a steam plant and was empowered to issue its order regulating and restricting the location of the plant.

The plaintiffs allege that § 5646, so far as it provides that the zoning commission "may regulate and restrict the proposed location of any steam plant . . . of any public service company," is unconstitutional because it contains no express standard or guide for

the exercise of the functions delegated to the commission. Whenever the constitutionality of an act of the legislature is challenged, the court "must make every presumption and intendment in favor of the act and sustain it unless it is invalid beyond reasonable doubt." *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 586, 87 A.2d 139. It is the function of the zoning commission, in passing upon an application for the approval of the location of a generating plant under this section, to weigh the considerations of public convenience, necessity and safety which may argue for approval against the considerations of public zoning as laid down in the laws relating to zoning. The standards which must guide, the zoning commission, therefore, are a combination of the standards of public convenience and necessity and those of public health, safety and welfare and the stabilization of property values. In delegating authority to an administrative board, the legislature cannot know or foresee all the possibilities that might arise. The best it can do is to lay down general rules. *Connecticut Co.* v. *Norwalk,* 89 Conn. 528, 531, 94 A. 992; *State* v. *Darazzo,* 97 Conn. 728, 734, 118 A. 81. The challenge of unconstitutional delegation of legislative power is successfully met if the statute declares a legislative policy, establishes primary standards for carrying it out or lays down an intelligible principle to which the agency must conform with a proper regard for the protection of the public interest, and affords a resort to the courts for the protection of both the public interest and private rights. *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586; *State* v. *Vachon,* 140 Conn. 478, 482, 101 A.2d 509. The zoning commission was authorized by § 5646 to exercise a police power, and this section, together with the zoning legislation

governing Norwalk, furnishes adequate standards to meet constitutional requirements.

The plaintiffs charge further that the zoning commission has interpreted the statute in such a way as to make it unconstitutional as applied to them because as so applied (1) it is class legislation and (2) it violates the requirements of due process. While the commission was guided in part by considerations of local zoning needs, it was, nevertheless, acting as an agent of the state, clothed with special police powers. Its task was to deny the location of the steam plant on Manresa Island or to permit it under such regulations and restrictions relative to zoning as in its legal discretion it deemed necessary and suitable. To be valid, its order must come within the police power it was exercising. Consequently, the order must have a reasonable relation to the public welfare within the particulars specified in the statute or statutes under which it acted. *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 440, 86 A.2d 74; *Fitzgerald* v. *Merard Holding Co.,* 110 Conn. 130, 138, 147 A. 513; *Nectow* v. *Cambridge,* 277 U.S. 183, 188, 48 S. Ct. 447, 72 L. Ed. 842. An examination of the order issued by the commission demonstrates that the regulations and restrictions imposed were made in the interest of the public health, safety and welfare and the public convenience and necessity.

As to the charge of class legislation and lack of due process, it is axiomatic that all private property is held subject to the police power of the state. In *Modeste* v. *Public Utilities Commission,* 97 Conn. 453, 455, 117 A. 494, for example, it was conceded that the act conferring upon the public utilities commission the power to regulate jitney service was valid, and the court held that, pursuant to it, the

commission could legally confer upon one or more persons what amounted to a monopoly when the public convenience and necessity required it. The legislature may prohibit bathing in the tributaries of a reservoir owned by a public utility; even though it results in a benefit to the utility, the statute is a reasonable regulation of the enjoyment of a private right which, uninhibited, could be dangerous to the public health. *State* v. *Heller,* 123 Conn. 492, 498, 196 A. 337. The situation in the present case is, as regards constitutionality, not essentially different from that presented in *De Palma* v. *Town Plan Commission,* 123 Conn. 257, 193 A. 868, where the town plan commission created a zone fifteen acres in extent for the erection of a garbage incinerator over the strenuous objection of the owners of residential property nearby. In *State ex rel. Carter* v. *Harper,* 182 Wis. 148, 162, 196 N.W. 451, an ordinance which provided that "[a] structure or premises may be erected or used in any location by a public-service corporation for any purpose which the railroad commission decides is reasonably necessary for the public convenience or welfare" was held to be a valid exercise of the police power. See also *Higbee* v. *Chicago, B. & Q.R. Co.,* 235 Wis. 91, 99, 292 N.W. 320; 2 Yokley, Zoning Law & Practice (2d Ed.) § 255; Bassett, Zoning, p. 211; 58 Am. Jur. 1009. The statute, as interpreted and applied by the zoning commission, complies with constitutional requirements.

We consider next the plaintiffs' claim that the order of the zoning commission is null and void because the commission had no legal existence owing to the failure of the city of Norwalk to adopt, pursuant to § 121i of the 1947 Supplement, the provisions of the 1947 Zoning Act. Sup. 1947, §§ 121i-130i (Rev. 1949, § 836 et seq.). The commission was

first authorized by chapter 279 of the Public Acts of 1923. The common council of the city of Norwalk established it on July 24, 1923. In 1925, the legislature enacted a general zoning law which specifically recognized any zoning commission, including that of Norwalk, created under the 1923 statute. Public Acts 1925, c. 242, § 1. In 1929, the zoning commission of Norwalk, acting under the authority of the 1925 act, adopted zoning regulations. The 1925 act subsequently became chapter 29 of the 1930 Revision of the General Statutes. Section 162b of the 1951 Cumulative Supplement to the General Statutes (as amended, Cum. Sup. 1953, § 290c) provides that, "[i]n any town, city or borough which prior to October 1, 1947, had adopted the provisions of chapter 29 of the 1930 general statutes, as amended, and which has not abolished its zoning commission by local action, the zoning commission may" continue to function as such a commission notwithstanding the failure of the municipality to act under § 121i of the 1947 Supplement. Since it does not appear that the zoning commission of Norwalk was abolished by local action, it was, by the provisions of § 162b of the 1951 Cumulative Supplement, in legal existence on January 26, 1953, when it adopted the order of which the plaintiffs complain. See *Kuehne* v. *Town Council*, 136 Conn. 452, 453, 72 A.2d 474.

The plaintiffs contend that the order of the zoning commission is invalid because they were denied a legal hearing. Their complaint is that the commission conducted an ex parte investigation and denied to them the right of cross-examining witnesses. Section 5646 makes no specific provision for any hearing before the zoning commission, although it is implied that there may be one from the fact that the appeal

to the public utilities commission is referred to as a "rehearing." It does not necessarily follow that the hearing before the zoning commission need be anything other than an ex parte hearing of the applicant, although the zoning commission adopted the better practice in allowing both sides to be heard. The use of the word "rehearing" in connection with an appeal to the public utilities commission would rather indicate that only the applicant need be heard by the zoning commission, reserving to the public utilities commission a hearing of "all parties in interest." The zoning commission sat as an administrative body. The statute required it to give written notice of any order it might make "to each party affected thereby" but not of any hearing to be held before it. Section 5646 gave no right to the plaintiffs to demand a hearing before the zoning commission. Any interested party could appeal from its order to the public utilities commission. As a matter of fact, two of the parties to this action, the defendants Steurer and The Harbor View Company, did so. The public utilities commission is required to hold a hearing after due notice to all parties in interest. One hearing before final action satisfies the constitutional requirement. *Brein* v. *Connecticut Eclectic Examining Board,* 103 Conn. 65, 85, 130 A. 289; *Lichter* v. *United States,* 334 U.S. 742, 791, 68 S. Ct. 1294, 92 L. Ed. 1694.

Where the only hearing required is an ex parte one, as in the present case, persons who have no standing to be heard have no basis to complain about the manner in which the hearing was conducted. The zoning commission did hold a hearing. The stipulation of facts contains an allegation that no cross-examination was allowed. However, by stipulation the exhibits are before us and they in-

clude a transcript of the hearing. We have examined this transcript with care. The plaintiffs were ably and vigorously represented. Proper cross-examination must be relevant. Its limits are within the reasonable discretion of the trier. *Fahey* v. *Clark*, 125 Conn. 44, 46, 3 A.2d 313; *Fordiani's Petition*, 99 Conn. 551, 561, 121 A. 796. No unreasonable limitations were placed by the commission upon the right of cross-examination.

Nor does the fact that a member of the commission visited other steam generating plants during the course of the investigation make the proceedings invalid. Members of an administrative body are entitled to consider facts which they have learned through personal observation, if properly made. *Mrowka* v. *Board of Zoning Appeals,* 134 Conn. 149, 154, 55 A.2d 909. Even if it were conceded that knowledge from personal observation was improperly acquired by a member of the commission in the instant case, it was not harmful to the plaintiffs. The company produced testimony on conditions at the plants visited by the commission member. The plaintiffs produced witnesses who contradicted this testimony. While we adhere to the proposition that the members of a zoning commission should decide any cause primarily upon the evidence offered at the hearing, when a hearing is required, they may, nevertheless, take into consideration personal knowledge which they have properly acquired. We cannot find that in the instant case the conduct of one member of the commission vitiated the entire proceedings. *Mrowka* v. *Board of Zoning Appeals,* supra.

The plaintiffs press the further claim that the act of 1947 setting up a planning commission for Norwalk (25 Spec. Laws 302) precludes the zoning commis-

sion from acting upon the location of the steam plant until the proposed location has been approved by the planning commission and the council of the city. Section 5646 prescribes that the board, commission or committee which has the power to regulate and restrict the location of structures, trades, industries and business is the one which may regulate and restrict the proposed location of any steam plant. The zoning commission, and not the planning commission or the council, is the only body in Norwalk which possesses this power. In fact § 5646 expressly provides that no authority granted to a town planning commission shall apply to so much of the plant, building or structures of any public service company as is under the jurisdiction of the public utilities commission. Nor is any intention to supersede § 5646 or to alter it in any way expressed in the special act creating the planning commission. Implied repeal of general laws by subsequent special acts is not favored. *Arsenal School District* v. *Hartford,* 120 Conn. 348, 363, 180 A. 511; *State ex rel. Pape* v. *Dunais,* 120 Conn. 562, 567, 181 A. 721. Furthermore, the requirement of prior approval by the planning commission and council is, by the terms of the special act, dependent upon the adoption by the city either of a master plan or of a sectional plan embracing the location of the proposed structure. It does not appear that either condition has been met. There is no merit to the plaintiffs' contention.

In a counterclaim, the company asks for a declaratory judgment as to the power of the public utilities commission, under § 5646, to authorize the location of the steam plant on the company's property in Norwalk despite the provisions of any general or special statute or ordinance relating to zoning and

planning. The public utilities commission is not a party to these proceedings. It is fundamental that upon a reservation we will not answer a question which affects the rights of anyone not a party. *Center Bridge Co.* v. *Wheeler & Howes Co.,* 86 Conn. 585, 587, 86 A. 11; Maltbie, Conn. App. Proc., p. 178.

We answer "Yes" to the questions (a), (b), (c) and (d). For the reasons stated, we decline to answer question (e). No costs will be taxed in this court to any party.

In this opinion INGLIS, C. J., and WYNNE, J., concurred.

QUINLAN, J. (dissenting). I feel compelled to dissent from the conclusion of the majority that the zoning commission acts as a special agency of the state to the extent that "it exercises its zoning powers in the manner prescribed in § 5646 and subject to an appeal to the public utilities commission."

In order that a public utility may claim a preferred position as against zoning regulations, there must be either a state statute or the granting of a zoning exception or variance to which it can point. In the absence of the grant of an exception or a variance, one of three forms of enabling legislation must exist: (1) The public utilities commission has to be clothed with the power of recommendation to the zoning authorities, or (2) the public utility must be excepted from the regulations and restrictions of zoning ordinances, or (3) a right must be given to a public utility to locate within a municipality. 58 Am. Jur. 1009; see *State ex rel. Carter* v. *Harper,* 182 Wis. 148, 196 N.W. 451; *Higbee* v. *Chicago, B. & Q.R. Co.,* 235 Wis. 91, 292 N.W. 320.

The company maintains that it has this necessary legislative authority under § 5646. This statute

defines two areas of jurisdiction, one for the common council and the public utilities commission and one for the zoning commission. In one of these areas the local common council plays a part with the public utilities commission. In the other the local zoning commission is supreme in the regulation and restriction of the location of a steam plant, as in the instant case, subject to appropriate appeals. The distinction to be borne in mind is one of power, direction and control over a public utility on the one hand, and location of the plant on the other. A brief look at the provisions of the statute confirms this analysis.

Public utilities may be instruments of danger, and they touch the lives of the large number of persons served. The legislature acted wisely and prudently in enacting § 5646, giving to the public utilities commission the *power, direction* and *control* over such functions as "operations, plant, building, structures or equipment of any public service company," and in enacting § 5401, giving the commission powers in relation to the safety of the public and of the employees of such a company. That, however, was the limit of the powers thus bestowed, and § 5646 confines any orders of the public utilities commission to such power, direction and control. It is from orders of local authorities bearing upon such matters that an appeal is provided to the public utilities commission.

The legislature just as wisely and prudently, in definite and plain language, reserved to the zoning authorities the other area of jurisdiction, viz., to *regulate* and *restrict* "the proposed location of any steam plant, gas plant, gas tank or holder, water tank or electric substation of any public service company." Here was an attempt to maintain the

integrity of zoning and to prevent the location of such structures in residential zones from the lowest to the highest. And, more significantly, no appeal of any kind was provided from the action of the zoning commission because the legislature knew that zoning statutes and ordinances provide their own procedures.

I am of the opinion that the holding of my associates, so far as it recognizes that the zoning commission in Norwalk was acting as a special agency of the state and thus exercised its powers subject to an appeal to the public utilities commission, is erroneous.

In this opinion O'SULLIVAN, J., concurred.